745 So.2d 1066 (1999)
Willie HEGGAN, Appellant,
v.
The STATE of Florida, Appellee.
Nos. 99-595, 99-559.
District Court of Appeal of Florida, Third District.
November 10, 1999.
Rehearing Denied December 15, 1999.
Bennett H. Brummer, Public Defender, and Kenneth P. Speiller, Special Assistant Public Defender, for appellant.
Robert A. Butterworth, Attorney General, and Jill K. Traina, Assistant Attorney General, for appellee.
Before GODERICH, FLETCHER and SORONDO, JJ.
SORONDO, J.
Willie Heggan (defendant) appeals to this court the lower court's final judgment of conviction and sentence. The State of Florida appeals the lower court's refusal to consider sentencing the defendant as a habitual offender. This court consolidated the appeals under the case filed by the defendant.
After a jury trial, the defendant was convicted of assault, aggravated assault on a law enforcement officer and resisting an officer with violence. He was acquitted of the charges of burglary of an unoccupied conveyance and petit theft.
*1067 Subsequent to voir dire examination, when a prospective juror's name came up during the selection process, the State sought to excuse him for cause. The State argued that the juror had been asked twice if he would believe a police officer less than a civilian witness and both times he stated that he would believe a police officer less. The trial judge indicated that he did not think the juror understood the question and denied the cause challenge. The State then exercised a peremptory challenge seeking to excuse the juror.
The defense objected, noting that the defendant was an African American and that the juror gave every indication of being fair, and requested that the State make a showing that the challenge was not race based.[1] The State began to respond but was cut off by the trial judge who said he thought a race neutral reason had been given. The defense objected to the challenge. Prior to the swearing of the jury, the defendant properly preserved his Melbourne objection.
Prior to trial, the State filed a "Notice of State's Intention to Seek Enhanced Penalty pursuant to § 775.084 and Request for Order for Pre-Sentence Investigation Report" that contained a certificate of service upon defense counsel on July 14, 1998. The Notice was filed on July 15, 1998.
A sentencing hearing was conducted on February 12, 1999, at which the trial judge stated he would not consider enhancing the defendant's sentence because notice of the state's intent to seek enhanced sentencing was not provided to the defendant himself until that very day. The court then sentenced the defendant to ten years in state prison. The sentence as to count I was suspended. The ten-year sentence was within the defendant's sentencing guidelines.

THE JURY SELECTION ISSUE
The defense argues that the trial judge did not follow the three step test established by the Florida Supreme Court in Melbourne v. State, 679 So.2d 759 (Fla. 1996). In Melbourne, the Court set forth the following analysis for determining the racial, ethnic, and/or gender neutrality and genuineness of a peremptory challenge:
Step 1 A party objecting to the other side's use of a peremptory challenge on racial grounds must: a) make a timely objection on that basis, b) show that the venire person is a member of a distinct racial group, and c) request that the court ask the striking party its reason for the strike.
Step 2 At this point, the burden of production shifts to the proponent of the strike to come forward with a race neutral explanation.
Step 3 If the explanation is facially raceneutral and the court believes that, given all the circumstances surrounding the strike, the explanation is not a pretext, the strike will be sustained.
See id. at 764. The state concedes defendant's compliance with step 1 of the procedure. The defendant argues that the trial judge did not comply with step 2, in that he did not require the prosecutor to articulate a valid race-neutral reason. He notes that the prosecutor did not offer any reason because the judge did not allow her the opportunity. The actual exchange follows:
THE COURT: Okay, [juror in question], defense?
[DEFENSE COUNSEL]: Defense accept [sic].
[PROSECUTOR]: We would ask for a cause, specifically [juror] was asked *1068 twice if he would believe a police officer less than a regular witness, and both times Judge he stated he would believe a police officer less.
THE COURT: I don't think he understood the question. I am going to deny the motion for cause. You want to use a peremptory?
[PROSECUTOR]: Yes.
[DEFENSE COUNSEL]: Judge, I will point out my client is African American. He indicated every indication of being fair. I would ask the State show this is not a race cause for him to be stricken.
[PROSECUTOR]: Your Honor
THE COURT: I think she has given a neutral reason, but I understand, I think the reason have
[DEFENSE COUNSEL]: Judge for the record, I object.
A reading of this exchange clearly indicates that the judge accepted the state's proffered reason in support of its motion to exclude the juror for cause as its reason for exercising the peremptory challenge. Compliance with the Melbourne analysis does not require the incantation of magical words. "The right to an impartial jury ... is best safeguarded not by an arcane maze of reversible error traps, but by reason and common sense." Id. at 765.
In the alternative, the defendant argues that even if the trial judge properly accepted the state's reason as articulated in its motion to exclude the juror for cause, the state's proffered explanation was not a valid race-neutral reason. In support, the defense observes that the juror in question did not, as argued by the state below, say that he would believe police officers less than other witnesses, and, if he did, he certainly did not say it twice.
The exchange between the prosecutor and the juror was certainly not a model of clarity. The transcript of the discussion reads as follows:
[PROSECUTOR]: [Sir], are you going to believe a police officer more because they are police officers?
PROSPECTIVE JUROR: No.
[PROSECUTOR]: What about less simply because they are police officer [sic]?
PROSPECTIVE JUROR: Yes, they work just like the rest.
[PROSECUTOR]: Simply because they are police officers you are going to believe them?
PROSPECTIVE JUROR: Yes.
[DEFENSE COUNSEL]: Judge, could we get [the juror] to repeat his last response?
PROSPECTIVE JUROR: They are just like a person.
The response the prosecutor was undoubtedly referring to was the following:
[PROSECUTOR]: What about less simply because they are police officer [sic]?
PROSPECTIVE JUROR: Yes, they work just like the rest.
(Emphasis added). The inartfully constructed question elicited a response which appears to be a non-sequitur. The prosecutor then shifted gears and asked the opposite question:
[PROSECUTOR]: Simply because they are police officers you are going to believe them?
PROSPECTIVE JUROR: Yes.
Again, the answer does not make sense even if one interprets the previous response, "... they work just like the rest," as meaning that a police officer is like any other person. After this response, defense counsel asked the judge if the juror could please repeat his answer. The juror then said:
PROSPECTIVE JUROR: They are just like a person.
*1069 Neither the prosecutor nor defense counsel made any effort to clarify these poorly articulated responses.[2]
We begin our analysis by observing, yet again, that peremptory challenges are presumed to be exercised in a nondiscriminatory manner. Id. at 764. Although the questions propounded and the answers received from the juror in question are not as clear as we would like, the juror did at one point answer affirmatively to a question which asked whether he would believe a police officer less than others, albeit with an unclear caveat. This response provided the state a valid raceneutral reason even though the answer was stated only once, as opposed to the prosecutor's faulty recollection that it had been articulated two times.[3] This, however, was not the only reason proffered by the prosecutor. At the conclusion of jury selection, after the defendant had accepted the jury, the prosecutor articulated the reason which the judge had prevented her from stating earlier in the selection process. She stated:
[PROSECUTOR]: Your Honor, so the record is clear, on the jury are [sic] two other African-American males. Moreover as it relates to [the juror in question], I observed his demeanor, and at several times he appeared to be unconcerned with the proceeding, not really listening to the questions in my opinion.
This reason is also facially race-neutral and, consequently, sufficient to satisfy step 2 of the Melbourne analysis.
The trial judge then observed that there were other African-Americans on the jury. Although the exercise of each peremptory challenge must be evaluated on its own merits, the fact that the party being accused of discriminating against a particular racial group has accepted other members of that same group is one of the factors a trial judge may consider in determining the ultimate question of pretext. The fact that the prosecutor in this case had accepted two other African-Americans on the jury was relevant to, although by no means dispositive of, the trial judge's assessment *1070 of the genuineness of her stated reason for excusing the juror in question.
We are satisfied that the prosecutor articulated valid race-neutral reasons for striking the juror in question, and conclude that the trial court's allowance of the strike was not clearly erroneous.

THE SENTENCING ISSUE
The issue presented by the state's cross-appeal is whether the trial court erred in refusing to consider whether the defendant should be sentenced as a habitual offender pursuant to section 775.084(3)(a), Florida Statutes (1997). Our analysis of this argument focuses on whether, given the history of this case, the defendant received notice of the state's intent to ask the court to sentence him as a habitual offender.
Section 775.084(3)(a)2 reads as follows:
Written notice shall be served on the defendant and the defendant's attorney a sufficient time prior to the entry of a plea or prior to the imposition of sentence in order to allow the preparation of a submission on behalf of the defendant.
As indicated above the state served notice on defense counsel approximately six months before the date of sentencing. The defendant does not challenge the state's compliance with the notice requirement, as to counsel. The defendant does, however, take the position that he was not notified until the day of sentencing and that such eleventh hour notice was not sufficient under the statute.
The state responds that although the defendant may not have been personally served with a formal, written notice, he did have actual notice of the state's intent. During the pendency of the case the state made several plea offers, all of which involved habitual offender sentences. These offers were discussed in open court and the judge communicated them to the defendant. Moreover, immediately before trial commenced on January 6, 1999, the judge spoke to the defendant as follows:
THE COURT: ... Mr. Heggan would you come and step in front of the court. I, before we proceed with the trial, you have every right to have a jury trial.
You have a right to plead not guilty and persist in that plea. You have a right to testify or not to testify. You have a competent counsel.
Now, I just want to make sure though that you understand that if you are convicted, under the Habitual Offender Law, the maximum sentence you will be facing is thirty years in the State Prison.

I am sure your lawyer has gone over this with you, but just as a matter of caution before we start, I want you to understand that and make sure you do understand it.

Do you have any questions of me?
THE DEFENDANT: No.
THE COURT: Do you want to talk to your lawyer? I just want to make sure you understand that, and you have told your lawyer you want to go to trial?
THE DEFENDANT: Yes, sir.
(Emphasis added). The state's arguments are well taken. In Massey v. State, 609 So.2d 598 (Fla.1992), the Florida Supreme Court concluded that the failure to serve the defendant with an actual copy of the notice of intent did not violate the statute where the prosecutor, during trial, announced that she was filing the notice of intent to have the defendant sentenced as a habitual felony offender but that she had not yet made a copy of it. The Court stated:
The purpose of requiring a prior written notice is to advise of the state's intent and give the defendant and the defendant's attorney an opportunity to prepare for the hearing. This purpose was clearly accomplished because Massey and his attorney had actual notice in advance of the hearing. It is inconceivable that Massey was prejudiced by not having received the written notice. *1071 Id. at 600. The exact situation exists in the present case. Here, the defendant's lawyer received notice six months before the sentencing hearing. Defense counsel's suggestion that the defendant was somehow surprised by being physically served with the notice on the day of sentencing is disingenuous. Counsel had known the state's intent for six months and was, or should have been, totally prepared to address the sentencing issue. Moreover, the defendant was well aware that the state had repeatedly offered nothing but habitual offender sentences during plea negotiations. Even if that was not enough, the trial judge, in an abundance of caution, warned the defendant that he was facing thirty years as a habitual offender if he did not prevail at trial. This occurred five weeks before the sentencing hearing. It would be nothing less than irrational to conclude that the defendant was not fully aware of the state's intent to seek an enhanced sentence. We can think of no prejudice which could possibly have inured to the defendant under these circumstances, nor does the defendant suggest any beyond the hyper-technical argument that the statute must be literally applied, an argument which our Supreme Court has wisely and correctly rejected.
We affirm the defendant's convictions. We reverse the sentence imposed by the trial court and remand for re-sentencing. On remand, the trial court will allow the state to present evidence to establish that the defendant qualifies for sentencing as a habitual felony offender. After hearing such evidence, the trial court may sentence the defendant pursuant to the applicable provisions of section 775.084, or may again sentence the defendant to a guideline sentence if it still believes such sentence to be appropriate.
Affirmed in part; reversed in part; and remanded with instructions.
NOTES
[1] Rather than identifying the juror as an African-American, defense counsel identified his client as such. The record is clear, however, that the juror in question was African-American. More significantly, the state has conceded compliance with step 1 of the analysis set forth in Melbourne v. State, 679 So.2d 759 (Fla.1996). The issue is, therefore, not before us.
[2] The trial judge also made no effort to clarify these responses. Although the judge has no affirmative duty to become involved in these situations, it would be helpful if, when less than clear responses are made by jurors, trial judges intervened in order to clarify the jurors' statements. Such intervention should not be geared towards rehabilitating or disqualifying jurors but rather to clarify their responses so that counsel and the court can later make jury selection decisions based on accurate information. Needless to say, such clarifications would also facilitate appellate review.
[3] The defendant mistakenly relies on our decisions in Randall v. State, 718 So.2d 230 (Fla. 3d DCA 1998), and Overstreet v. State, 712 So.2d 1174 (Fla. 3d DCA 1998), for the proposition that the prosecutor's erroneous recollection of what jurors said is fatal in this case. In both of these cases the objecting party conceded that the reason articulated in support of the peremptory challenge was valid and race-neutral. The arguments were that although the stated reasons were race-neutral, they were pretextual because other jurors of different races, who had given identical responses, had been accepted. In both cases the prosecutor and defense attorney disagreed as to exactly what individual jurors had said during the course of voir dire examination. The issue presented on appeal was the accuracy of the trial court's recollection of responses given by these jurors. In both cases the trial judges' recollections of what was said were in error.

In the present case, the defendant's objection said only that "the juror gave every indication of being fair." The only challenge was to the racial neutrality of the proffered reason. Defense counsel never raised the issue of pretext below, nor did he ever argue to the trial judge that the state's recollection of the exchange with the juror was erroneous. Thus, the argument advanced by the defense on appeal concerning the accuracy of the State's proffered reason for the challenge was not preserved for our review. See State v. Fox, 587 So.2d 464, 464-65 (Fla.1991); Ratliff v. State, 666 So.2d 1008, 1011 n. 5 (Fla. 1st DCA)("[W]hen the trial court relies on an uncontested factual predicate, an appeals court cannot make a de novo determination that the predicate is factually inaccurate."), approved, 679 So.2d 1183 (Fla.1996).