792 So.2d 533 (2001)
John Fitzgerald PRINGLE, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D99-1723.
District Court of Appeal of Florida, Third District.
June 27, 2001.
Rehearing and Rehearing Denied August 29, 2001.
*534 Bennett H. Brummer, Public Defender, and J. Rafael Rodriguez, Special Assistant Public Defender, for appellant.
Robert A. Butterworth, Attorney General, and Frank J. Ingrassia, Assistant Attorney General, for appellee.
Before GODERICH, FLETCHER, and SORONDO, JJ.
Rehearing and Rehearing En Banc Denied August 29, 2001.
FLETCHER, Judge.
John Fitzgerald Pringle was adjudicated guilty of attempted sexual battery upon a person 12 years or older, kidnaping, and aggravated battery. Pringle has raised a series of issues in his quest for a new trial. The sole issue that needs discussion here relates to the thorny process of dealing with peremptory challenges where the non-striking party raises an objection to the strike as being based on racial grounds.
The resolution of whether a peremptory challenge is to be allowed by the trial judge where a party objects to the other side's use thereof as being racially based is to be reached in a three-step process. The first step requires the non-striking party to make a timely objection that the peremptory challenge is based on racial grounds; to show that the venireperson is a member of a distinct racial group; then to request that the court ask the striking party to explain the reason for the strike. See Melbourne v. State, 679 So.2d 759, 764 (Fla.1996).
The second step in the process requires the proponent of the strike to come forward with a race neutral explanation. If the proponent's explanation is facially race neutral, then the court must take the third step. That is, the court must decide whether the facially race neutral explanation is or is not a pretext, given all the circumstances surrounding the strike. The trial court's focus in step three is not *535 on the reasonableness of the explanation, but rather its genuineness. In evaluating genuineness the trial court is analyzing a subjective issue, the decision turning primarily on the trial court's assessment of the striking party's credibilitywhich is solely within the purview of the finder of fact. If the court finds the explanation is not pretextual the strike will be sustained. Melbourne, 679 So.2d at 764.
In the instant case the defense announced a peremptory strike of venireperson Ducharme, at which time the prosecution stated:
"I'm going to object. That is the third white female[1] that has been stricken."
R. 231.
Although the prosecution did not request of the trial court that it ask the defense to explain the reason for the strike, the trial court anticipated the request and immediately stated to the defense:
"Will you please articulate the reason for the strike of Ms. Ducharme?"
R. 231.
As there are no ritual incantations that must be made in order to call forth the striking party's reasons, the trial court's anticipatory inquiry shifted the burden to the defense, which then provided the court with reasons that were facially race neutral.[2]
At this juncture, because the defense's reasons were facially race neutral, it was incumbent upon the trial court to rule on the genuineness (but not the reasonableness) of the defense's explanation. In other words, the issue for the trial court to decide at this point was whether the defense, notwithstanding its apparently acceptable reasons, was actually harboring the desire to rid itself of venireperson Ducharme because she is white, because she is a woman, or both. However, when faced with the defense's explanation the trial judge responded:
"I'm not allowing the strike. I don't find that it's race neutral. She answered everybody's questions, and chose to question her [sic]. She's in communications. Actually retired. She said she is interested in serving. She has never been through the experience. She has never been the victim of a crime. She has no law enforcement in her family. I'm going to find that you have not given this Court a race neutral reason other than just [bare] speculation that she never served before, that she wouldn't make a good juror. So I'm going to seat her over your objection."
R. 231-32.
Here the trial judge erroneously stated that the asserted bases for the strike were not race neutral. This was an error in semantics. An analysis of the trial judge's statement makes it clear that she believed the defense's stated reasons were pretextual, notwithstanding her use of the words race neutral. Simply stated, the trial court conducted a Melbourne step 3 analysis of genuineness even though it was couched in the language of Melbourne step 2.
*536 This is not the first time such an event has reached this court. In Washington v. State, 773 So.2d 1202 (Fla. 3d DCA 2000) a similar situation arose:
"During jury selection, the defendant sought to exercise a peremptory challenge on a prospective juror. The state objected and asked the court to ask defense counsel for a race and gender neutral reason for striking the juror. Counsel responded as follows:
`He affirmatively volunteered that he was on a criminal jury. Murder trial in fact. He volunteered that given the way he said it, our client does not feel satisfied with him. That's our reason for a race neutral, gender neutral reason.'
(Emphasis added). The court ruled as follows:
`The court did not note anything about the way Mr. Benjamin articulated the fact he had been on a jury previously, murder jury, previously in his words, and the court cannot find that to be a race neutral reason for the peremptory strike.'
(Emphasis added)."
Washington at 1203.
The trial court in Washington had concluded incorrectly that the proffered reason was not race and gender neutral, which in fact it was. Washington at 1203-04. Nonetheless the trial court's determination was affirmed on appeal because, even though it used race neutral language,[3] the trial court:
"did, in fact, find a lack of genuineness in the proffered reason as required by step 3.... [T]he court ... concluded that there was nothing unusual about the way the prospective juror answered the question at issue. In other words, the judge did not believe the proffered reason was genuine."
Washington at 1204.
In Washington, this court made it clear, as we have tried to do here, that no magic words or incantations are required, and that substance must control over form. The trial court's quest is not to create a perfect script, but to assure that peremptory challenges are not used to exclude persons from jury service for improper reasons. As the trial judge is on the scene we should wisely defer to her or his assessment of credibility, affirming on appeal unless the trial judge's decision to allow or disallow the strike is clearly erroneous. Melendez v. State, 787 So.2d 918 (Fla. 3d DCA 2001). As we cannot say that the trial judge here clearly erred in denying the defense's peremptory challenge, we cannot overturn the trial results on this ground.
As we find no reversible error as to the remaining issues raised by Pringle, we affirm the convictions and sentences.
GODERICH, J., concurs.
SORONDO, J. (dissenting)
The state and defense exercised a total of nine peremptory challenges. The first peremptory was exercised by the state against prospective juror, Mr. Hurlston. Defendant objected, observed that Hurlston was an African American, and asked for a Melbourne inquiry. The court directed the state to "articulate a reason for the strike," and the prosecutor complied. The court then stated:
I find that the reason the first two reasons specifically the issue of the intent, but more specifically negative experience with police officers are race neutral reasons, and do not appear to be pretextual. *537 Based upon the other jurors that are currently seated and have not been stricken to allow the strike. So I will allow the strike.
The defense then struck prospective jurors, Ms. Perez and Mr. Forrest. The state did not object to the first but did object to the challenge against Mr. Forrest, arguing that Forrest was white. The court instructed defense counsel to explain her reasons for the strike. After hearing from the defense, the court ruled:
I do find that it is race neutral reason.
I have also examined the other jurors that are still seated, and find that at this point it does not appear to be pretextual. So I will at this point, I will allow the strike of Mr. Forrest.
The state then struck prospective juror, Mr. Coon, and the defense, Ms. Dix, without objection.
The next peremptory was exercised by the state against prospective juror, Mr. Ottensen. Defense counsel said: "I would like to know why?" The trial court took this to be a Melbourne objection, noted for the record that Ottensen was an "Anglo male," and asked the prosecutor to articulate his reasons for the strike. After the prosecutor explained, the court ruled:
On the issue that he believes he recognize [sic] the Defendant, I'm going to find that it is a race neutral reason and not pretextual.
The defense next sought to excuse prospective juror, Ms. Bithorn. The transcript indicates that the court itself observed that Bithorn was the second white female stricken and asked for an explanation of the strike. This appears to be a reporting error. After a lengthy dialogue between the court and defense counsel concerning the reason for the strike, the prosecutor expressed concern about creating an "appellate issue" and withdrew his objection. Regardless of who raised the issue, the peremptory challenge was allowed.
Defendant then struck prospective juror, Mr. McFadden, without objection, and thereafter tried to strike Ms. Ducharme. The state objected to the striking of Ducharme arguing that she was the third white female stricken by the defense.[4] Defense counsel first observed that there were two white females on the jury. She then explained her reason for striking Ms. Ducharme as follows:
She didn't talk a lot. She seemed to beshe mentioned she had never been on a jury, and I think she really wants to be on a jury, and I think she would probably be easily swayed by either side, Judge. That's my impression of her, and that's why I do not want her on.
The trial judge then ruled:
I'm not allowing the strike. I don't find that its race neutral. She answered everybody's questions, and chose to question her. She's in communications. Actually retired. She said she is interested in serving. She has never been through the experience. She has never been the victim of a crime. She has no law enforcement in the family. I'm going to find that you have not given this court a race neutral reason other than just bear [sic] speculation that she never served before, that she wouldn't make a good juror. So I'm going to seat her over your objection.
(Emphasis added). My colleagues in the majority suggest that the judge's conclusion *538 that the proffered reason was not race neutral was an "error in semantics." They then conclude that "an analysis of the trial judge's statement makes it clear that she believed the defense's stated reasons were pretextual, notwithstanding her use of the words race neutral. Simply stated, the trial court conducted a Melbourne step 3 analysis of genuineness even though it was couched in the language of Melbourne step 2." Maj. Op. at 535. I disagree.
The rulings of the trial court during the jury selection process clearly demonstrate that the judge had a very clear understanding of the difference between steps 2 and 3 of the Melbourne analysis. In each instance, save one, she first addressed the racial neutrality of the proffered reason(s) and then the genuineness of the same in considering the possibility of pretext. Her comments suggest that in addressing the issue of pretext she considered the way counsel had treated other, similarly situated prospective jurors.
When considering the reasons offered to justify the challenge against Ms. Ducharme, the judge stopped after determining that the reasons were not race neutral. She did not conduct the genuineness analysis she had conducted when considering the previous challenges. My conclusion in this regard is buttressed by the exchange that followed the court's ruling:
COURT: Anyone else that you wish to strike?
[DEFENSE COUNSEL]: Judge, for the record, my client does nothe discussed who he likes, and he doesn't want Ms. Ducharme on the jury.
COURT: Well, not wanting somebody isn't enough. It's not the status of the law. It used to be the way it's done, but it is not done that way any more. You can't strike some body just because you don't like them.

(Emphasis added). These remarks are incorrect. In fact, Florida law allows the striking of a juror for even arbitrary and capricious reasons, so long as the reasons are not race, ethnic or gender based. See Davis v. State, 691 So.2d 1180 (Fla. 3d DCA 1997), review dismissed, No. SC96537, 786 So.2d 1184 (Fla. Feb. 20, 2001). Indeed, in Franqui v. State, 699 So.2d 1332, 1335 (Fla.1997), the Florida Supreme Court stated that the expressed reason, "I don't like him," standing alone, was race neutral. Consistent with this view, this Court has held that a race neutral reason is simply one that is not race based. See Johnson v. State, 706 So.2d 401 (Fla. 3d DCA 1998). Defendant's proffered reasons for excluding Ms. Ducharme were therefore race neutral, and the trial judge erred when she concluded otherwise.
The majority relies on Washington v. State, 773 So.2d 1202 (Fla. 3d DCA 2000), to support its effort to interpret the trial judge's intent. Washington, however, is distinguishable. There, the trial judge specifically discredited the subjective observation upon which the proffered reason was based. This Court was not required to speculate about the judge's intent because it was clear that a genuineness assessment had been made.
In the present case, the majority's conclusion that the trial judge meant to say that the proffered reason was "pretextual" rather than "race neutral," is speculative at best. The conclusion is belied by her very methodical and consistent recognition of the difference in these terms throughout the jury selection process. Although I agree that the Melbourne analysis does not require the "incantation of magical words," Heggan v. State, 745 So.2d 1066, 1068 (Fla. 3d DCA 1999), appellate courts cannot breathe new meaning into words and terms that have been very clearly *539 defined, nor can we ignore the totality of the jury selection record and focus on a single statement for the sake of salvaging what appears to have been a fair and just result.[5]
I respectfully dissent.
NOTES
[1] We have previously concluded that whites constitute a distinct racial group like any other race. Melendez v. State, 787 So.2d 918 (Fla. 3d DCA 2001). Gender based peremptory challenges are prohibited, Abshire v. State, 642 So.2d 542 (Fla.1994), and our discussion is applicable thereto.
[2] Which reasons were:

"She didn't talk a lot. She seemed to be she mentioned she had never been on a jury, and I think she really wants to be on a jury, and I think she would probably easily be swayed by either side, Judge. That's my impression of her, and that's why I do not want her on." (R.231).
[3] The Washington trial court made the same error in semantics as did the trial court here.
[4] Having reviewed the record, the reference to two prior white females appears to have been to prospective jurors Dix and Bithorn. The state did not object to the striking of Dix and ultimately withdrew its objection to the striking of Bithorn.
[5] I confess that the thought of reversing this conviction is repugnant. The evidence against the defendant was overwhelming. Unfortunately, these types of errors are not subject to a harmless error analysis. Gilliam v. State, 514 So.2d 1098 (Fla.1987).