962 So.2d 1013 (2007)
Raul CARRILLO, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D05-975.
District Court of Appeal of Florida, Third District.
August 8, 2007.
*1014 Bennett H. Brummer, Public Defender, and Robert Kalter, Assistant Public Defender, for appellant.
Bill McCollum, Attorney General, and Valentina M. Tejera, Assistant Attorney General, for appellee.
Before RAMIREZ, ROTHENBERG, and LAGOA, JJ.
LAGOA, Judge.
The Defendant, Raul Carrillo, appeals a conviction and sentence for first-degree murder with a firearm and aggravated stalking with a firearm. We affirm.
I. FACTUAL HISTORY
On August 2, 2000, a grand jury indictment charged Defendant with first-degree murder with a firearm and aggravated stalking with a firearm.
At trial, the State elicited the testimony of various witnesses to prove beyond a reasonable doubt that Defendant killed his girlfriend after she ended their relationship. The victim's brother testified that the night before she was murdered he overheard a telephone conversation during which his sister ended her relationship with the Defendant. Two eyewitnesses also testified that they heard gun shots immediately before the victim was found in her car and that a man who looked like Defendant was seen near the crime scene. These same witnesses identified Defendant's green pick-up truck as having been near the crime scene.
The State further presented Defendant's video-taped confession in which he admitted shooting the victim and disposing of the gun, a .32 caliber, in a canal. Defendant's cell mate also testified that Defendant admitted to him that he killed the victim and further told him where he had disposed of the gun.
The State presented testimony from Detective Mike Melgarejo, the lead detective, who testified that the .32 caliber gun was found exactly where Defendant had told his cell mate it was. The State also presented expert testimony from Thomas Fadul, supervisor of Miami-Dade Police Department's forensic identification section, that the gun found in the canal was the same gun that fired the casings found near the victim's body.
The jury found Defendant guilty of first-degree murder with a firearm and aggravated stalking with a firearm.
II. JURY SELECTION
On appeal, Defendant claims that the trial court erred in striking a prospective male juror over the objection of the defense without making a finding that the reason proffered by the State was genuine. We find that no new trial is warranted as the State volunteered a gender-neutral reason for the strike, and the trial court implicitly ruled that such reason was genuine. Accordingly, we affirm.
During the jury selection phase, the State challenged eight jurors for cause, four men and four women. The State also sought to exercise nine peremptory challenges against eight men and one woman. Two of the peremptory challenges were used on jurors the State had unsuccessfully sought to remove for cause. This appeal relates to a single prospective juror, Paul Soule, against whom the State sought to use one of its peremptory challenges.
During voir dire, the trial court asked the jury panel whether "yourself, close friend, or family member [has] ever been a victim of crime." Mr. Soule stated that he had been a victim of auto theft and that a *1015 close friend had been a victim of armed robbery. Following Mr. Soule's answer, the trial court further inquired whether "any of those incidents [would] affect your ability to be fair and impartial in this case." Mr. Soule responded that he couldn't answer the question, but noted that "I honestly do not believe that those life experiences would affect my ability in this case."
Following this exchange, Mr. Soule informed the trial court that he had a question regarding the death penalty:
MR. SOULE: I do have a question, your Honor.
THE COURT: Okay.
MR. SOULE: You mention that this is a murder trial and that the death penalty is not on the table. Why is that, sir?
THE COURT: Because it is.
MR. SOULE: We'll never know.
THE COURT: No, you'll never know.
MR. SOULE: I don't mind if you answer the question.
THE COURT: The State of Florida does not seek the death penalty in this case. It's as simple as that. . . .
When the State moved to strike Mr. Soule, the defense objected and the following exchange ensued:
[PROSECUTOR]: Strike No. 3.
THE COURT: Number 3?
[PROSECUTOR]: Yes.
* * *
[DEFENSE COUNSEL]: Juror 3. Your Honor, I object. He's a man. She wants to get more women on the jury. And he's been sitting there since we began and there is absolutely no answer he gave that would even hint to be anything other than an excellent juror. He was mature and very experienced.
THE COURT: Yeah. But he's not part of any suspect class for which to raise any Neil/Slappy Melbourne inquiry.
[PROSECUTOR]: Judge, just for the record, he actually affirmatively asked why the death penalty is not on the table, he muttered under his breath in response thereto, which I noted. He also 
[DEFENSE COUNSEL]: What was his  I didn't hear his response.
THE COURT: Nobody here did.
[PROSECUTOR]: And about the convicted felon testifying.
[DEFENSE COUNSEL]: I'm sorry, what was the last thing?
[PROSECUTOR]: The court even asked him just for the record.
[DEFENSE COUNSEL]: What was that about? What was the last one? . . .
THE COURT: That he muttered under his breath on the response to the death penalty being put on the table. There wasn't any from him.
[PROSECUTOR]: He actually raised it in front of the question of 
[DEFENSE COUNSEL]: What's wrong with that? That's a very legitimate question.
[PROSECUTOR]: It's not a legitimate question for someone on this jury, Judge.
THE COURT: That's the State's eighth.
The jury composition ultimately included five males, seven females, and the alternates, a male and a female.
III. ANALYSIS
It is within the trial court's discretion to determine the propriety of the reasons for a strike. "[T]he trial court's decision turns primarily on a determination of credibility and will not be overturned on appeal unless clearly erroneous." State v. Holiday, 682 So.2d 1092, 1094 (Fla.1996)(citing to Melbourne v. State, 679 So.2d 759, 764-65 (Fla.1996)). *1016 Based on our review of the entire voir dire record, we find no such error.
At the outset, we reject the State's argument that the defense failed to make a sufficient objection because he failed to ask for a race or gender-neutral reason for the strike. "A simple objection and allegation of racial discrimination is sufficient, e.g., `I object. The strike is racially motivated.'" Melbourne, 679 So.2d at 764 n. 2. See also Whitby v. State, 933 So.2d 557 (Fla. 3d DCA 2006)(recognizing that a Neil inquiry is required when counsel simply objects to a peremptory challenge, identifies that the juror is a member of a distinct racial or ethnic group, and requests an inquiry). In the instant case, defense counsel stated: "I object. He's a man. She wants to get more women on the jury." Counsel's objection was clearly directed to the State's strike of juror 3 on the basis of his gender and therefore sufficient to mandate an explanation for the strike.
On appeal, the Defendant argues that the trial court's statement that men are not a protected class constitutes prima facie proof that the court never engaged in a genuineness analysis. We cannot agree. Despite the trial court's off-the-cuff remark, the State offered a gender-neutral reason for the strike, and the trial court engaged in a discussion with counsel regarding the genuineness of the strike. Specifically, the State expressed its concerns with the juror's question about the reason the State did not seek the death penalty, and the juror's comment in response to a voir dire inquiry that a convicted felon is not a very reliable witness. While the trial court in the instant case was incorrect that men are not a suspect class,[1] the State's proffer of a gender-neutral reason for the strike and the ensuing discussion with the Court, affirmatively indicate that the trial court implicitly underwent a genuineness inquiry and found the State's proffered reason to be non-pre-textual.
The Defendant would have us fashion a rule of law that whenever a trial court makes an incorrect statement of law, that misstatement cannot be corrected by fulfilling the court's obligations under Neil,[2]Slappy,[3] and Melbourne.[4] We decline to so elevate form over substance. This Court has made it clear that "no magic words or incantations are required, and that substance must control over form. The trial court's quest is not to create a perfect script, but to assure that peremptory challenges are not used to exclude persons from jury service for improper reasons." Pringle v. State, 792 So.2d 533, 536 (Fla. 3d DCA 2001). See also Davis v. State, 691 So.2d 1180, 1183 (Fla. 3d DCA 1997). "A trial court's genuineness inquiry involves consideration of factors which tend to show whether the proffered reason is pre-textual." Scott v. State, 920 So.2d 698, 700 (Fla. 3d DCA 2006). In deciding this issue, courts have considered the following relevant circumstances: the make-up of the venire, prior strikes exercised against the same racial group, a strike based on a reason equally applicable to an unchallenged juror, or the singling out of a juror for special treatment. See Melbourne, 679 So.2d at 764, n. 8. Finally, a trial court's decision on the ultimate issue of pretext turns primarily on an assessment of credibility and will be affirmed on *1017 appeal unless clearly erroneous. Id. at 764-65.
Here, the record supports the State's gender-neutral reason for the peremptory strike. The record demonstrates that the State sought to strike both women and men from the panel and that no other juror asked why the Defendant was not facing the death penalty. Because the trial court heard the State's gender-neutral explanation, allowed defense counsel to argue its position, and then granted the peremptory strike, we are satisfied that a genuineness inquiry was indeed conducted. We, therefore, find no error in allowing the State to exercise a peremptory challenge to strike Juror Soule. Accordingly, we affirm Defendant's conviction and sentence for first-degree murder with a firearm and aggravated stalking with a firearm.
Affirmed.
LAGOA AND ROTHENBERG, JJ., concur.
RAMIREZ, J., (dissenting).
Because I cannot agree with the majority that the record supports a finding-by-implication as fulfilling step three of Melbourne's pretextual analysis, I dissent.
The majority opinion first gives a factual history which would be very relevant if the case law allowed us to affirm based on harmless error.[5] The defense in the case, however, was not misidentification. Carrillo's defense at trial was that he was not guilty of the aggravated stalking and that he was guilty of manslaughter, not first degree murder. On appeal, the only issue raised by Carrillo is whether the trial court erred when it allowed the State to strike a male juror, juror Soule, without making any finding as to whether the State's proffered reason was genuine.
Before moving to strike prospective juror Soule, the State moved to strike prospective jurors Joseph Wiesen, Dennis McCue, Juan Montes, Paterno Escarilla, Mark McDaniel, Jeffrey Reyes, and Barry Snyder all male jurors. Carrillo objected to the strikes against prospective jurors Escarilla and Reyes. As to Escarilla, Carrillo challenged the State strike on the ground that, "He is a Latin." The State proffered a race/gender neutral reason for the strike, asserting that the juror declared that a first-degree murder of premeditation requires some level of planning. The trial court stated, "The court finds that raise [sic] neutral not pretextural [sic] reason." As to Reyes, Carrillo objected on the ground that "Mr. Reyes is Latin." The State provided a reason for the strike submitting that "he's an ordained minister." The trial court again stated, "The court finds that a race neutral, gender neutral real and not pretextural [sic] reason." After further argument, the judge again said, ". . . the court finds that an *1018 ample race, neutral, ethnic neutral reason for the exercise of a peremptory challenge."
Prior to the State's strike against juror Soule, Carrillo moved to strike prospective jurors Lanette Alexander, Nicole Ambrose, Nerva Gonzalez, Henry Payoute, Jose Jean-Pierre, Consuela Germain, Danielle Linton, Dorothy Guerra, Sophie Cazes and Sandra Eutsey. The State challenged three of Carrillo's strikes, all females: Gonzalez, Germain and Linton. As to Gonzalez, the State objected and asked for a race/gender neutral reason. After the defense proffered his reasons, the judge concluded that the reasons were pretextual. In fact, the trial court then stated:
. . . having identified Ms. Gonzalez as one of those categories of persons under Neil/Slappy and Melbourne for which pretextural [sic] race, gender, ethnic neutral reasons must be exercised, the Court has to make a determination as to whether or not the reason is genuine that it is gender and ethnic neutral and not pretextural [sic]. . . .
The State, however, withdrew the challenge to the strike to Gonzalez, so the trial court excused her.
As to Germain, the State challenged Carrillo's strike. After hearing the defendant's reasons, the judge denied the peremptory strike stating, "The court finds that is not a raise [sic] gender, ethnic neutral reason. It is  the Court finds it's not genuine and pretextural [sic]."
Finally, as to Linton, the State challenged Carrillo's strike. At the trial court's direction, defense counsel provided that "Ms. Linton is all of 26 years old" and that "she is very young. . . ." The trial court noted that there was another juror the same age as Linton that Carrillo had not sought to strike. The judge then stated, "The Court denies the peremptory on Ms. Linton and does not find it to be a race neutral, gender neutral or genuine, but rather pretextural [sic]."
We then get to juror Soule when the State exercises a back-strike, leading to the following exchange:
[Prosecutor]: Strike No. 3.
[Court]: Number 3?
[Prosecutor]: Yes.
[Defense Counsel]: I didn't hear her, I'm sorry.
[Court]: Three.
[Defense Counsel]: Juror 3.
Your Honor, I object. He's a man. She wants to get more women on the jury. And he's been sitting there since we began and there is absolutely no answer he gave that would even hint to be anything other than an excellent juror. He was mature and very experienced.
[Court]: Yeah. But he's not part of any suspect class for which to raise any Neil/Slappy Melbourne inquiry.
This was error. The majority opinion recognizes the error in footnote 1. Since 1994, the case law has recognized that men are cognizable members of a gender class for the purposes of a Neil/Slappy/Melbourne inquiry. This trial took place in 2005.
Instead of correcting the judge's misstatement of the law, the prosecutor stated:
[Prosecutor]: Judge, just for the record, he actually affirmatively asked why the death penalty is not on the table, He muttered under his breath in response thereto, which I noted. He also 
[Defense Counsel]: What was his  I didn't hear his response.
[Court]: Nobody here did.
[Prosecutor]: And what about the convicted felon testifying.
[Defense Counsel]: I'm sorry, what was the last thing?

*1019 [Prosecutor]: The court even asked him just for the record.
[Defense Counsel]: What was that about? What was the last one? She's not speaking up.
[Court]: That he muttered under his breath on the response to the death penalty being put on the table. There wasn't any from him.
[Prosecutor]: He actually raised it in front of the question of . . .
[Defense Counsel]: What's wrong with that? That's a very legitimate question.
[Prosecutor]: It's not a legitimate question for someone on this jury, Judge.
[Court]: That's the State's eighth.

(emphasis added).
I agree with the majority when it quotes from Pringle v. State, 792 So.2d 533 (Fla. 3d DCA 2001), that as appellate judges, we should not require "a perfect script." We should not demand "magic words or incantations." However, the three-step process delineated in Melbourne v. State, 679 So.2d 759 (Fla.1996), is not rocket science. In fact, the trial judge here seemed to be very cognizant of its requirements by repeatedly making genuineness and pretextual findings when ruling on the objections as to jurors Escarilla and Reyes (the defense objections), and jurors Gonzalez, Germain and Linton (the State's objections).
Neither the State's brief nor the majority opinion cites a single precedent authorizing a finding-by-implication exception to the analysis delineated in Melbourne. My own research only found Young v. State, 744 So.2d 1077 (Fla. 4th DCA 1999), where the State sought to strike a juror who could not be understood. The trial court also stated that it had trouble understanding the juror. Id. at 1083. The appellate court concluded that the State's race-neutral reason for striking the juror triggered step three analysis under Melbourne and that by opining on the record that the juror was hard to understand and allowing him to be peremptorily stricken for that reason, the trial court implicitly found that the prosecutor's reason for striking the juror was genuine. Id.
In contrast, the trial court here stated unequivocally that juror Soule was not part of any suspect class, failing to satisfy step one of Melbourne. The fact that, "for the record," the State nevertheless proffered race and gender neutral reasons does not indicate that the trial court was engaging in any further analysis. The trial court's comments about not hearing the juror's response, or muttering under his breath, does not remotely imply that the court (1) agreed with the reasons, (2) was receding from its position that Soule did not belong to a suspect class, or (3) found the reasons genuine and non-pretextual. Thus, I find no record support for the majority playing down the trial court's "off-the-cuff remark" because it proceeded to engage in a discussion regarding the genuineness of the strike. The exchange with counsel, quoted in its entirety in both the majority opinion and my dissent, do not touch even tenuously on whether the strike was pretextual.
Our situation is closer to Simmons v. State, 940 So.2d 580 (Fla. 1st DCA 2006) than Young. In Simmons, the State exercised peremptory challenges as to three of four prospective African-American jurors. Id. at 581. When the defense asked the State for a race-neutral reason challenging juror Campbell, the State responded that "her husband is a law enforcement officer," to which the trial court added, "at Baker Correctional." Id. The defendant argued that the stated reason might give the defense a good reason to move for a peremptory strike, but not the State. Id. The trial court answered, "I will allow the challenge. That is a race-neutral reason. Whether or not we view it favorable for *1020 the State or favorable for the Defense, it is a race-neutral reason." Id.
The Simmons court concluded that the trial judge's reference to a race-neutral reason was insufficient to demonstrate that the trial court exercised its duties pursuant to Melbourne:
The issue in this case turns on the third step: whether the state's explanation is facially race-neutral and the court believes that, given all the circumstances surrounding the strike, the explanation is not pretext. In deciding this issue, the courts have considered the following relevant circumstances: the racial make-up of the venire, prior strikes exercised against the same racial group, a strike based on a reason equally applicable to an unchallenged juror, or the singling out of a juror for special treatment.
Id. at 582 (citations omitted). The First District Court of Appeal reversed because the record did not indicate that the trial court had reached step three of the Melbourne analysis. Id. at 583. The appellate court stated:
When the defense challenged the prosecution's given reason to strike Ms. Campbell, the court merely stated "I will allow the challenge. That is a race-neutral reason. Whether or not we view it favorable for the State or favorable for the Defense, it is a race-neutral reason." By focusing merely on the fact the State offered a seemingly race-neutral reason, and accepting that the prosecution's reason for the strike may be solely for the benefit of the defense, it appears that the trial court bypassed the genuineness inquiry required in the Melbourne analysis.
Id. at 582-83.
The district court in Simmons then explained that the problem was exacerbated by the fact that the State's reason for removing juror Campbell raised a question of genuineness by its very nature. Id. at 583. The fact that juror Campbell's husband was a law enforcement officer appeared to favor the State. Id. While the reason was race-neutral on its face, further inquiry was required if the court was attempting to ascertain its genuineness. Id.
The set of facts in the case before us presents a stronger argument for reversal than Simmons. The trial court here did not even discuss whether the proffered reasons were race neutral. Equally important, the fact that juror Soule was concerned that the death penalty was not an option would appear to make him a juror favorable to the State, not the defense. More egregiously, we have the judge stating unambiguously that a male is not a member of a suspect class so as to even require a genuineness analysis. We certainly do not have the judge considering all the circumstances surrounding the strike of juror Soule. We have no indication that the judge considered the racial make-up of the venire, prior strikes exercised against the same group, a strike based on a reason equally applicable to an unchallenged juror, or the singling out of a juror for special treatment. On the contrary, it is clear that the State was systematically striking males from the venire.
Accordingly, as in Simmons, I am unable to conclude that, on this record, the trial court satisfied step three as outlined in Melbourne, 679 So.2d at 764. I would thus reverse and remand for a new trial.
NOTES
[1] Under Abshire v. State, 642 So.2d 542 (Fla. 1994), men are cognizable members of a gender class for the purposes of a Neil inquiry. See Thompson v. State, 648 So.2d 323 (Fla. 3d DCA 1995); Preston v. State, 641 So.2d 169 (Fla. 3d DCA 1994).
[2] State v. Neil, 457 So.2d 481 (Fla.1984).
[3] State v. Slappy, 522 So.2d 18 (Fla.1988).
[4] Melbourne v. State, 679 So.2d 759 (Fla. 1996).
[5] Perhaps the majority feels as Judge Schwartz did in his specially concurring opinion in Pickett v. State, 922 So.2d 987 (Fla. 3d DCA 2005), where he stated that some "cases reduce the noble idea reflected in Neil and Batson, that peremptory challenges, like everything else in our justice system, may not be employed to effect a discriminatory purpose into a formalistic rite in which any misstep from the intricate choreography prescribed by the cases requires reversal." Pickett, 922 So.2d at 993. But we made clear in Alsopp v. State, 855 So.2d 695, 698 (Fla. 3d DCA 2003) that:

Failure to conduct a Neil inquiry in this case therefore mandates reversal and remand for a new trial. See [State v.] Johans, 613 So.2d [1319,] at 1322 [(Fla.1993)](holding that "the proper remedy in all cases where the trial court errs in failing to hold a Neil inquiry is to reverse and remand for a new trial"); Vasquez v. State, 711 So.2d 1305, 1306 (Fla. 2d DCA 1998) (finding that the trial court committed reversible error in failing to conduct a Neil inquiry where the defendant had properly put the strike of a juror at issue).