46 So.3d 1081 (2010)
Jamar ALONZO, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D08-2014.
District Court of Appeal of Florida, Third District.
October 27, 2010.
*1082 Carlos J. Martinez, Public Defender, and Robert Kalter, Assistant Public Defender, for appellant.
Bill McCollum, Attorney General, and Nikole Hiciano, Assistant Attorney General, for appellee.
Before RAMIREZ, C.J., and WELLS and LAGOA, JJ.
LAGOA, J.
Jamar Alonzo ("Alonzo") appeals from his conviction for possession of a firearm by a convicted felon. Because the trial court properly followed the analysis as required by Melbourne v. State, 679 So.2d 759 (Fla.1996), we affirm Alonzo's conviction.
On appeal, Alonzo argues that during jury selection the trial court erred in allowing the State's peremptory strike of prospective juror Harbin, an African-American, over the objection of defense counsel without the trial court making a specific finding that the State's reason for the strike was genuine. Alonzo contends that the following exchange entitles him to a new trial:
THE STATE: The State will use its first peremptory [sic].
DEFENSE COUNSEL: We object. For the record, Ms. Harbin is an African American. The defense would like a race-neutral reason.
THE STATE: On her questionnaire she has family members who were accused of the crimes of robbery and drugs.
THE COURT: She is also a corrections officer. I think that is race-neutral.
DEFENSE COUNSEL: With respect to the pretextual nature of that, the state accepted Juror No. 4, Ms. Brown, who has also got family members who have been accused of crimes.[1]

*1083 THE COURT: Well, I can see from the face of the questionnaire Ms. Harbin is a law enforcement officer, a corrections officer, and I think that is a sufficiently reasonable basis, so I am going to allow the State's preemptory [sic]. That brings us up to No. 10, Mr. Rotenberg.

I. GUIDELINES FOR PEREMPTORY CHALLENGES

The Supreme Court instructs reviewing courts to be mindful of the following two principles when applying the Melbourne guidelines. "First, peremptories are presumed to be exercised in a nondiscriminatory manner. Second, the trial court's decision turns primarily on an assessment of credibility and will be affirmed on appeal unless clearly erroneous." Melbourne, 679 So.2d at 764-65; see also Murray v. State, 3 So.3d 1108, 1120 (Fla. 2009); Hoskins v. State, 965 So.2d 1, 7 (Fla.2007); Rodriguez v. State, 753 So.2d 29, 40 (Fla.2000).
The following guidelines govern a challenge to a peremptory strike:
(1) the objecting party must make a timely objection, must show that the venireperson is a member of a distinct racial group, and must request that the court ask the striking party the reasons for the strike; (2) if step (1) is met, the court must ask the proponent of the strike to explain the reason for the strike; (3) if the reason given is facially race-neutral and the court believes that given all the circumstances surrounding the strike, the explanation is not a pretext, the strike will be sustained.
Rodriguez, 753 So.2d at 40 (citing Melbourne, 679 So.2d at 764). "Throughout this process, the burden of persuasion never leaves the opponent of the strike...." Melbourne, 679 So.2d at 764.
In applying the third step, the trial court must determine the racial neutrality of the proffered reason, and satisfy itself that the explanation is not a pretext. Davis v. State, 691 So.2d 1180, 1183 (Fla. 3d DCA 1997). "The genuineness of the explanation is the yardstick with which the trial court will determine whether or not the proffered reason is pretextual." Id. The trial court may consider all relevant circumstances surrounding the strike in determining whether the proffered reason for the strike is genuine. See Melbourne, 679 So.2d at 764 n. 8. As the Supreme Court explained in Rodriguez:
In step (3), the court's focus is on the genuineness and not the reasonableness of the explanation. Further, the relevant circumstances that the court is to consider in determining whether the explanation is pretextual include such factors as the racial makeup of the venire; prior strikes exercised against the same racial group; a strike based on a reason equally applicable to an unchallenged venireperson; or singling out the venireperson for special treatment.
753 So.2d at 40.

II. ANALYSIS

We begin our analysis by finding that the reason provided by the State for striking Harbin was facially race-neutral. Indeed, Alonzo does not argue that the State's reason for striking Harbin was a *1084 pretext for racial discrimination.[2] Instead, Alonzo solely argues that the trial court failed to engage in a genuineness analysis, and therefore erred in allowing the State's strike. We disagree. Based on this record, we cannot say that the trial court's ruling was clearly erroneous.
Here, the record indicates that the trial court engaged in a genuineness analysis by focusing on the additional factor that Harbin was a corrections officer, and therefore not similarly situated to Brown, the comparator challenged by the State. Specifically, when defense counsel pointed out that Brown also had family members who had been accused of crimes, the trial court responded "[w]ell ... Ms. Harbin is a law enforcement officer, a corrections officer, and I think that is a sufficiently reasonable basis." This statement indicates that, as required by Melbourne, the trial court was considering all of the circumstances surrounding the strikein other words, the additional fact that Harbin was a corrections officer. That additional race-neutral reason meant that Harbin and Brown were not similarly situated and the trial court appropriately considered whether or not the State's reason for exercising its strike was genuine.
Step 3 of the Melbourne analysis does not require the trial court to state that it found the State's proffered reason for the strike to be "genuine." Indeed, there "is no requirement that the trial court specifically use the word `genuine.'" See Hoskins, 965 So.2d at 12 (holding trial court applied correct standard in step 3 analysis even though trial court used terms "neutral and reasonable" as these terms are synonymous with word "genuine"); see also Johnson v. State, 706 So.2d 401, 404 (Fla. 3d DCA 1998).
Moreover, this Court and other sister courts have affirmed peremptory strikes when the genuineness analysis merely was implicit in the trial court's ruling. In Davis, this Court held that the fact the trial court allowed a peremptory challenge, without more explanation, "clearly indicates that [the trial court] did not find the State's reason to be pretextual" and was sufficient to establish that trial court made a finding of genuineness. Davis, 691 So.2d at 1183; see also Bowden v. State, 787 So.2d 185, 188 (Fla. 1st DCA 2001) (holding that the trial court's indication that it did not believe strike was racially motivated established that "the trial court reached step three of the Melbourne analysis and determined the strike was genuine"); Watson v. State, 841 So.2d 659, 660 (Fla. 4th DCA 2003) (trial court engaged in genuineness analysis required under Melbourne where it stated "[a]ll right. Very well. That's a race neutral decision" in response to State's proffered reason for strike); Fleming v. State, 825 So.2d 1027, 1029 (Fla. 1st DCA 2002) (concluding that, by overruling the defense's objections, the trial court made an implicit finding that the State's strikes were genuine).
*1085 The dissent contends that because the trial court used the word "reasonable," rather than "genuine" that it failed to conduct a proper genuineness analysis under step 3. We respectfully disagree. Proper compliance with Melbourne does not mandate the "incantation of magical words," Heggan v. State, 745 So.2d 1066, 1068 (Fla. 3d DCA 1999), and "[t]here is nothing in Melbourne which requires trial judges to articulate their thought process on the issue of pretext." Johnson, 706 So.2d at 404. As this Court has explained, "[t]he trial court is not required to orally perform its genuineness analysis or to articulate the basis for its ruling." Lidiano v. State, 967 So.2d 972, 975 (Fla. 3d DCA 2007); accord Carrillo v. State, 962 So.2d 1013, 1017 (Fla. 3d DCA 2007) (where trial court heard State's gender-neutral explanation for strike, allowed defense counsel to argue its position, and then granted peremptory strike, trial court implicitly underwent a genuineness inquiry); Bowden, 787 So.2d at 188 (trial court's decision to allow State's peremptory challenge "would indicate that he found the strike to be genuine"). "The right to an impartial jury ... is best safeguarded not by an arcane maze of reversible error traps, but by reason and common sense." Melbourne, 679 So.2d at 765.
In the absence of clear error, this Court is compelled to affirm. Accordingly, we conclude that the trial court underwent the genuineness analysis required by Melbourne, and affirm Alonzo's conviction.
Affirmed.
WELLS, J., concurs.
RAMIREZ, C.J.
I respectfully dissent.
Although proper compliance with Melbourne does not mandate the "incantation of magical words," as the majority points out, it does mandate that the trial court focus on the genuineness of the race-neutral explanation as opposed to its reasonableness. See Murray v. State, 3 So.3d 1108 (Fla.2009). Here, the trial court clearly focused on its reasonableness. The transcript reflects that the trial court stated:
Well, I can see from the face of the questionnaire Ms. Harbin is a law enforcement officer, a corrections officer, and I think that is sufficiently reasonable basis, so I am going to allow the State's peremptory.
Instead of ruling on whether it believed that the State's reason for striking Juror Harbin was genuine, the trial court allowed the challenge by concluding that because Juror Harbin was a corrections officer, there was a reasonable basis for striking the juror. The transcript reflects that the trial court never undertook a "genuineness" analysis. This is not the correct application of the third step in the Melbourne analysis. Consequently, I would reverse Alonzo's conviction and remand for a new trial.
NOTES
[1] A review of the record shows that Alonzo's claim that prospective jurors Harbin and Brown were similarly situated is not accurate. While Alonzo's attorney stated that Brown had family members who had been accused of crimes, a review of the voir dire proceedings reveals only that Brown knew someone who had been arrested:

THE COURT: So that would be a problem. Then someone you know was arrested. So you know or do you have enough information to have an opinion about whether that person was treated fairly?
MS. BROWN: No.
The record, therefore, does not show whether the arrested person who Brown knew was a family member (as was the case with Harbin) or whether that person was also charged with a crime (as Harbin's family member had been). Unless the person identified by Brown was also a family member who had been charged with crimes, Brown and Harbin were not similarly situated. See Hoskins v. State, 965 So.2d 1, 10 (Fla.2007).
[2] Although a pretext may exist if a prospective juror is struck for a reason equally applicable to an unchallenged juror, Fleming v. State, 825 So.2d 1027 (Fla. 1st DCA 2002), "[t]he record, however, must show that the disparate treatment of the jurors in question is based on racial grounds." Davis v. State, 691 So.2d 1180, 1182 (Fla. 3d DCA 1997). Here, the race of juror Brown, the comparator that the State did not challenge, is not shown in the record. If the record fails to identify the respective race of the challenged and unchallenged jurors, the appellate court cannot determine if pretext exists. See Davis, 691 So.2d at 1182 (where record did not reflect race of allegedly similarly situated jurors, it was impossible for this Court to determine the issue of pretext). Cf. Rodriguez, 753 So.2d at 40 (where similarly situated juror was never identified in the trial court as Hispanic, Supreme Court could not determine the absence of pretext).