744 So.2d 1077 (1999)
Christopher YOUNG, Appellant,
v.
STATE of Florida, Appellee.
No. 98-1530.
District Court of Appeal of Florida, Fourth District.
September 29, 1999.
Rehearing Denied November 18, 1999.
*1079 Richard L. Jorandby, Public Defender, and Cherry Grant, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Rochelle Lewis Kirdy, Assistant Attorney General, West Palm Beach, for appellee.
GROSS, J.
Appellant Christopher Young was tried by a jury and convicted of robbery and a felony causing bodily injury. Young, an African-American, challenges his conviction on the ground that the trial court erred in denying his challenge to the state's peremptory strike of three jurors: Mr. Bayonne, an African-American male, Ms. Santiago, an Hispanic female, and Ms. Polk-Cohen, an African-American female. The jury seated consisted of three African-Americans, two Hispanics, and two members whose race was identified by the trial court as "not black or Hispanic." We hold that the trial court did not abuse its discretion in allowing the state's challenges to the jurors, and affirm.
Prior to 1984, the law relegated attacks on a prosecutor's use of peremptory challenges to a backwater. The burden of proving that a prosecutor had engaged in racial discrimination during jury selection was almost impossible to meet. A defendant was required to show not just that the prosecutor had discriminated in his case, but that the prosecutor had systematically used peremptory challenges against African-Americans "over a period of time." See State v. Simpson, 326 So.2d 54, 55 (Fla. 4th DCA 1976) (quoting Swain v. Alabama, 380 U.S. 202, 227, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), overruled, Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)). In Simpson, we quoted from United States v. Pearson, 448 F.2d 1207 (5th Cir.1971), to demonstrate how difficult it was to attack a prosecutor's exercise of challenges during jury selection:
The burden of proof faced by defendants is most difficult. It might require checking the docket for a reasonable period of time for the names of defendants and their attorneys, investigation as to the race of the various defendants, the final composition of the petit jury and the manner in which each side exercised its peremptory challenges. We can well understand how the present defendants' counsel were unable to produce additional evidence. In the six years which have passed since Swain, we have not found a single instance in which a defendant has prevailed on this issue.
Pearson, 448 F.2d at 1217-18.
State v. Neil, 457 So.2d 481 (Fla.1984), effected a sea change in the law surrounding jury selection. The supreme court rejected the Swain approach and set forth the "test" for trial courts to apply in ruling on the claim that a party had exercised a peremptory challenge solely on the basis of race:
A party concerned about the other side's use of peremptory challenges must *1080 make a timely objection and demonstrate on the record that the challenged persons are members of a distinct racial group and that there is a strong likelihood that they have been challenged solely because of their race ... [T]hen the trial court must decide if there is a substantial likelihood that the peremptory challenges are being exercised solely on the basis of race. If the court finds no such likelihood, no inquiry may be made of the person exercising the questioned peremptories. On the other hand, if the court decides that such a likelihood has been shown to exist, the burden shifts to the complained-about party to show that the questioned challenges were not exercised solely because of the prospective jurors' race. The reasons given in response to the court's inquiry need not be equivalent to those for a challenge for cause. If the party shows that the challenges were based on the particular case on trial, the parties or witnesses, or characteristics of the challenged persons other than race, then the inquiry should end and jury selection should continue.
Neil, 457 So.2d at 486-87 (footnotes omitted).
The United States Supreme Court followed suit two years later in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), when it overruled Swain and acknowledged that the Swain standard imposed a "crippling burden of proof" that rendered a prosecutor's peremptory challenges largely immune from constitutional scrutiny. Id. 476 U.S. at 92-93, 106 S.Ct. 1712. The Court held that the Equal Protection Clause prohibited a prosecutor from challenging veniremembers solely on account of their race.
In 1988, the Florida Supreme Court decided State v. Slappy, 522 So.2d 18 (Fla. 1988), receded from, Melbourne v. State, 679 So.2d 759 (Fla.1996). Slappy extended Neil in a number of significant ways. First, where Neil had required a showing of "a strong likelihood" that a juror had been challenged on the basis of race for there to be a Neil hearing, Slappy clarified that "any doubt as to whether the complaining party has met its initial burden should be resolved in that party's favor."[1] 522 So.2d at 22. Second, Slappy specified that the seating of a minority member on the jury did not foreclose a Neil challenge. As the supreme court framed the issue:
[T]he issue is not whether several jurors have been excused because of their race, but whether any juror has been so excused, independent of any other. This is so because
the striking of a single black juror for a racial reason violates the Equal Protection Clause, even where other black jurors are seated, and even when there are valid reasons for the striking of some black jurors.
Id. at 21 (quoting United States v. Gordon, 817 F.2d 1538, 1541 (11th Cir.1987)).
Third, Slappy required the trial judge to evaluate the credibility of the person giving a reason for the strike, "as well as the credibility of the asserted reasons ... weighed in light of the circumstances of the case and the total course of the voir dire in question, as reflected in the record." Id. at 22. To permit the questioned peremptory challenge, the trial judge had to "conclude that the proffered reasons [were], first, neutral and reasonable and, second, not a pretext." Id. The supreme court gave a nonexclusive list of five factors that "tend to show that the state's reasons [for a peremptory challenge] are not actually supported by the record or are an impermissible pretext":
(1) alleged group bias not shown to be shared by the juror in question, (2) failure to examine the juror or perfunctory *1081 examination, assuming neither the trial court nor opposing counsel had questioned the juror, (3) singling the juror out for special questioning designed to evoke a certain response, (4) the prosecutor's reason is unrelated to the facts of the case, and (5) a challenge based on reasons equally applicable to juror [sic] who were not challenged.
Id.
Slappy emphasized that record support was necessary to justify the reasons given for a challenge to a juror, as well as to demonstrate the absence of pretext. Significantly, Slappy stated that where "the total course of questioning of all jurors shows the presence of any of the five factors ... and the state fails to offer convincing rebuttal, then the state's explanation must be deemed a pretext." Id. at 23. This language from Slappy set a low ceiling for the finding of a pretext. Also, Slappy was not clear about the standard for appellate review of trial court rulings on peremptory challenges.[2]
Slappy and Neil proved to be a fertile source of appellate issues. A Westlaw Keycite search demonstrates that through 1996, Slappy was cited 226 times and Neil 335 times in appellate opinions.
Both trial and appellate courts had difficulty applying Slappy. See Melbourne v. State, 679 So.2d 759 (Fla.1996); Joseph A. Tringali, The Challenge of Peremptory Challenges A Brief Study in the Evolution of the Law, 71-Jun Fla. B.J. 100 (1997).[3] In some cases following Slappy, appellate courts parsed the transcripts of voir dire like biblical scholars poring over sacred text.[4] A common perception was that Neil had become "an arcane maze of reversible error traps" with little relationship to what was actually happening in the courtroom. Melbourne, 679 So.2d at 765.
For this reason, in Melbourne, the supreme court receded in part from Slappy, clarified how a trial court was to address a Neil challenge, and reemphasized the correct standard of appellate review. Step 1 of the procedure requires a party objecting to the other side's use of a peremptory challenge to
a) make a timely objection on that basis, b) show that the venireperson is a member of a distinct racial group, and c) request that the court ask the striking party its reason for the strike. If these initial requirements are met (step 1), the court must ask the proponent of the strike to explain the reason for the strike.
Melbourne, 679 So.2d at 764 (footnotes omitted).
Step 2 of the process under Melbourne requires the proponent of the strike to offer a "race-neutral explanation" for the strike. Id. A race neutral explanation is one where "no predominant discriminatory intent is apparent" from the given explanation, taken at face value. Id. at n. 6. If the explanation is not facially race-neutral, the strike should be denied without further inquiry.
If the explanation is facially race neutral, the trial court proceeds to step 3 of the process. At that stage:
[i]f ... the court believes that, given all the circumstances surrounding the strike, the explanation is not a pretext, the strike will be sustained (Step 3). *1082 The court's focus in step 3 is not on the reasonableness of the explanation but rather its genuineness. Throughout this process, the burden of persuasion never leaves the opponent of the strike to prove purposeful racial discrimination.
Id. at 764 (emphasis added) (footnotes omitted). The "circumstances surrounding the strike" which the trial court must evaluate include the Slappy factors that are quoted above. See Overstreet v. State, 712 So.2d 1174, 1177 (Fla. 3d DCA 1998). In addition, the supreme court indicated that the "racial make-up of the venire" is a circumstance a court may also take into consideration in ruling. Melbourne, 679 So.2d at 764 n. 8. Importantly, Melbourne struck a balance between the need to eliminate racial discrimination in the exercise of peremptory challenges and the traditional freedom accorded to peremptory challenges in British and American law. The supreme court quoted Justice O'Conner's observation that:
[a]bsent intentional discrimination ... parties should be free to exercise their peremptory strikes for any reason, or no reason at all. The peremptory challenge is, "as Blackstone says, an arbitrary and capricious right; and it must be exercised with full freedom, or it fails of its full purpose."
Id. at n. 11 (quoting Hernandez v. New York, 500 U.S. 352, 374, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (O'Conner, J., concurring) (quoting Lewis v. United States, 146 U.S. 370, 378, 13 S.Ct. 136, 36 L.Ed. 1011 (1892))).
Melbourne drew a distinction between a nonracial reason for a peremptory strike which might be questionable when judged by an objective, reasonable man standard, and an impermissible strike based on race. The court wrote that the:
Florida Constitution does not require that an explanation be nonracial and reasonable, only that it be truly nonracial. Reasonableness is simply one factor that a court may consider in assessing genuineness.
Id. at n. 9.
Most significant in Melbourne is the focus on the trial court's role in evaluating the "genuineness" of an explanation for striking a juror. A trial court must analyze a subjective issuewhether a proffered explanation for a challenge is a pretext, which means that it conceals an intent to discriminate based on race. As the supreme court recognized, identifying the true nature of an attorney's motive behind a peremptory strike turns primarily on an assessment of the attorney's credibility. See id. at 764. In our legal system, credibility is a matter solely within the purview of a finder of fact. For this reason, a trial judge's ruling on the "genuineness" of a peremptory challenge "will be affirmed on appeal unless clearly erroneous." Id. at 764-65; Smith v. State, 699 So.2d 629, 636-37 (Fla.1997), cert. denied, 523 U.S. 1008, 118 S.Ct. 1194, 140 L.Ed.2d 323 (1998); cert. denied, 523 U.S. 1020, 118 S.Ct. 1300, 140 L.Ed.2d 466 (1998). As the supreme court wrote in Reed v. State, 560 So.2d 203, 206 (Fla.1990), in applying the law on peremptory challenges, "we must necessarily rely on the inherent fairness and color blindness of our trial judges who are on the scene and who themselves get a `feel' for what is going on in the jury selection process." See Files v. State, 613 So.2d 1301 (Fla.1992); Johnson v. State, 717 So.2d 1057, 1061 (Fla. 1st DCA 1998), review granted, 727 So.2d 906 (Fla.1998).
Since Melbourne, both the supreme court and this court have acknowledged and upheld the trial court's broad discretion in ruling on the exercise of peremptory challenges. See Franqui v. State, 699 So.2d 1332 (Fla.1997), cert. denied, 523 U.S. 1040, 118 S.Ct. 1337, 140 L.Ed.2d 499 (1998); cert. denied, 523 U.S. 1097, 118 S.Ct. 1582, 140 L.Ed.2d 797 (1998); State v. Holiday, 682 So.2d 1092 (Fla.1996); King v. Byrd, 716 So.2d 831 (Fla. 4th DCA 1998); Anderson v. State, 711 So.2d 230 *1083 (Fla. 4th DCA 1998); Harrison v. Emanuel, 694 So.2d 759 (Fla. 4th DCA 1997); Nelson v. State, 688 So.2d 971 (Fla. 4th DCA 1997). Where we have reversed a trial court's decision, the trial court's assessment of credibility was severely compromised by an inaccurate recollection of the questioning during voir dire. See Brown v. State, 733 So.2d 1128 (Fla. 4th DCA 1999); Michelin N. America, Inc. v. Lovett, 731 So.2d 736 (Fla. 4th DCA 1999); Georges v. State, 723 So.2d 399 (Fla. 4th DCA 1999).
Applying Melbourne to this case, we affirm, since we do not find that the trial court's rulings were clearly erroneous.

Mr. Bayonne
The state struck Mr. Bayonne. The defense asked for a reason why Bayonne, an African-American male, would not be qualified as a juror. The state responded "[t]he guy couldn't understand. If [I can't] understand him speaking, I don't think there is a good chance he will understand what goes on in a trial. I couldn't understand him, how he was talking." The court also stated that it had trouble understanding Bayonne"I will have to admit I did have trouble understanding him also. He did have an extremely thick accent. I was afraid the court reporter was going to ask what he was saying. I was going to field that one to the clerk." Due to Bayonne's heavy accent, the court questioned:
[w]hether he [was] capable of understanding English, I think because of the very strong accent, I see that as a race, neutral reason anyway for the State striking at this point, because it does raise some questions about his ability, not only to communicate with other jurors but also to understand what is happening. I will take him out.
The defense attorney acknowledged that the juror was hard to understand. The trial judge gave the defense an opportunity to further question Bayonne to show that he could understand English and that he could make himself understood. The defense chose not to question Bayonne further.
Having an accent is not limited to one particular racial or ethnic group. A heavy accent may signal some difficulty with the English language which might hinder a potential juror's ability to understand the testimony at trial and to communicate with other jurors during deliberations. These are facially race-neutral reasons for a peremptory strike. See Clayton v. State, 615 So.2d 826 (Fla. 4th DCA 1993).
The state's race-neutral reason for striking Mr. Bayonne triggered step 3 analysis under Melbourne. "There is nothing in Melbourne which requires trial judges to articulate their thought process on the issue of pretext." Johnson v. State, 706 So.2d 401, 404 (Fla. 3d DCA 1998). By opining on the record that Mr. Bayonne was hard to understand and allowing him to be peremptorily stricken for that reason, the trial court implicitly found that the prosecutor's reason for striking Mr. Bayonne was genuine. See, e.g., Michelin N. America, Inc., 731 So.2d at 741 ("Although the trial court did not use the language of Melbourne, its denial amounted to a finding Michelin's reason was not genuine."); King v. Byrd, 716 So.2d 831, 834 (Fla. 4th DCA 1998) (finding that when trial court's stated reason was insufficient, "[w]e interpret this as a determination that the reason was not genuine and was a pretext, thereby fulfilling step three of the analysis"). Nothing in the record indicates that the trial court's ruling was clearly erroneous.

Ms. Santiago
The state struck Ms. Santiago. In response to the defense's request for a reason for the strike, the prosecutor replied "One she was so quiet. She was so quiet I couldn't hear her answers. I don't think she responded great to your answers or the questions about herself. I couldn't hear her and I am not deaf. That is the reason I am challenging Ms. Santiago." *1084 The state's reason is a facially race-neutral reason. As such, step 3 analysis was triggered. The trial court stated "I will permit the challenge of Ms. Santiago." The trial court thus implicitly decided that the state's reason for striking Santiago was genuine. As we have observed, Florida law does not require the explanation for a strike to be objectively reasonable, only that it be truly nonracial. In this case the trial court could have relied heavily on the presence of two Hispanic members of the jury and concluded that the prosecutor's proffered reason for the strike was nonracial. As an appellate court, we must rely on the superior vantage point of the experienced trial judge, "who can consider the demeanor of those involved and can get a feel for what is going on in the jury selection process." Johnson, 717 So.2d at 1062. We find no abuse of discretion in the trial court's decision to allow the strike.

Ms. Polk-Cohen
After hearing that a member of Ms. Polk-Cohen's family had been arrested, the court questioned her further. The court learned that the government had charged the prospective juror's sister-in-law with the crime of robbery. Polk-Cohen felt that her sister-in-law was not treated fairly by the criminal justice system. Nonetheless, Polk-Cohen said that she did not harbor any feelings that would affect her ability to sit as an impartial juror. The prosecutor struck Polk-Cohen because her sister-in-law was arrested for robbery and Polk-Cohen felt that her sister-in-law was not treated fairly. When the defense requested a race neutral reason for the strike, the trial court stated "[t]he [s]tate gave a race-neutral reason. She had a family member unfairly treated, either by the prosecutor or police, and I think that is a race-neutral reason for striking the juror. I will permit the strike."
Having a family member whom the veniremember feels was treated unfairly when arrested is a race-neutral reason for challenging a veniremember. See Anderson, 711 So.2d at 231.
As for step 3, the trial court's questioning of Polk-Cohen during voir dire, coupled with the court allowing the peremptory strike, demonstrates that the trial court was satisfied that the state's reasons were genuine. See, e.g., Davis v. State, 691 So.2d 1180, 1183 (Fla. 3d DCA 1997). The defense contends on appeal that the state's reason must have been pretextual because two seated jurors also had family members who had been arrested. However, jurors Diaz and Miranda differ from Polk-Cohen because both believed that their relatives had been fairly treated. We find no abuse of discretion.
On the remaining issue we find no double jeopardy violation in appellant's convictions of robbery under section 812.13(1), Florida Statutes (1997) and a felony causing bodily injury under section 782.051(1), Florida Statutes (1997).
AFFIRMED.
GUNTHER and HAZOURI, JJ., concur.
NOTES
[1] The supreme court further refined this aspect of the procedure in State v. Johans, 613 So.2d 1319, 1321 (Fla.1993), where it held that a "Neil inquiry is required when an objection is raised that a peremptory challenge is being used in a racially discriminatory manner."
[2] Files v. State, 613 So.2d 1301 (Fla.1992), addressed the standard of review issue. A divided supreme court held that the abuse of discretion standard was the proper standard of review of a trial court's finding that a peremptory challenge was reasonable, race neutral, and nonpretextual.
[3] Tringali's article as well as Jason Laeser, Jurors and Litigants BewareSavvy Attorneys Are Prepared to Strike: Has Purkett v. Elem Signaled the Demise of the Peremptory Challenge at the Federal and State Levels?, 52 U. Miami L.Rev. 635 (1998), give an excellent history of the law surrounding peremptory challenges.
[4] See, e.g., Nunez v. State, 664 So.2d 1109 (Fla. 3d DCA 1995); Reeves v. State, 632 So.2d 702 (Fla. 1st DCA 1994).