763 So.2d 1161 (2000)
Norberto VASQUEZ, Appellant,
v.
STATE of Florida, Appellee.
No. 98-0014.
District Court of Appeal of Florida, Fourth District.
January 19, 2000.
*1162 Patrick C. Rastatter of Glass & Rastatter, P.A., Fort Lauderdale, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Heidi L. Bettendorf, Assistant Attorney General, West Palm Beach, for appellee.
GROSS, J.
Norberto Vasquez appeals his convictions and sentences for count I: first degree murder; count II: burglary with assault/battery; count III: kidnapping; and count IV: robbery. Vasquez was sentenced to life imprisonment with a 25 year mandatory minimum for count I; a term of life for count II; a term of life for count III; and 15 years for count IV. All sentences were ordered to run consecutively. We affirm.

Introduction
On the morning of September 29, 1993, between 9:00 and 10:00 a.m., 73-year-old Beatrice Feldmesser was murdered in her townhome in Davie. She was found by her husband, a retired jeweler, when he returned home from the gym. Mrs. Feldmesser's hands were bound behind her back. Something had been stuffed into her mouth, and something had been placed over her head to prevent her from breathing. She had a yellow substance around her nose and mouth, which indicated that she had been gagging. Consistent with being face down and trying to breathe, her nose, mouth, and left side of her face were bruised and abrased. Mrs. Feldmesser also had bruises on the back of her right leg and lacerations on the back of her right hand. There was evidence of blunt trauma on the right side of her back. The cause of death was determined to be asphyxia.
Missing from the townhome were Mrs. Feldmesser's unique bracelet and a gold Rolex watch that she always wore. Jewelry boxes in a dresser had been ransacked. Vasquez and co-defendant, Jerry Ellis, were arrested.[1]

Facts Implicating Appellant[2]
Around the time of the murder, Vasquez approached a childhood friend, Dawn *1163 Guertin. He told her that he wanted to rob a townhome in Davie, which he knew to be occupied by a jeweler. Vasquez's motive was to get money or jewelry to trade for cocaine.
At about 2:45 a.m. on the day of the murder, Vasquez, Jason Holloway, and Wendy Sullivan (Vasquez's girlfriend at the time), "talked, [and] did a couple of lines" at Sullivan's house. During this conversation, Vasquez told Holloway that co-defendant Ellis "was wanting to do something." Holloway interpreted this to mean that "they was wanting to do a burglary." Between 5:00 and 5:30 a.m., codefendant Ellis arrived at Sullivan's home. He and Vasquez left around 6:00 a.m.
After the murder, Guertin spoke with Vasquez. He told her "I really fucked up. Something went wrong."
Several witnesses saw Vasquez in possession of a watch and bracelet matching the description of the watch and bracelet taken from the victim. Vasquez sold a woman's Rolex watch to Allison Strosser. He showed her a unique bracelet matching the description of the one taken from the victim, but Strosser did not purchase it. The day after the murder, Vasquez tried to sell jewelry from a "score" to Raymond Kilpatrick. At that time, Kilpatrick saw him with a stun gun. Vasquez told Kilpatrick that he had tied up a woman, put a rag in her mouth and duct-taped it shut.
After appellant's arrest, Ronnie Montzdeoca talked to him in the detention facility. Vasquez said that he had used a stun gun on a woman during a burglary and killed her by tying and gagging her so that she smothered to death.
Allison Strosser kept a stun gun in her car. Near the time the crimes were committed, she discovered the stun gun to be missing after she had loaned her car to Vasquez. She saw Vasquez playing with the stun gun at a bar one night.

Analysis
We find no error in the trial court's failure to excuse a juror for cause. There is record support for the trial court's conclusion that she would be a competent juror. See Johnson v. State, 660 So.2d 637, 644 (Fla.1995). Moreover, appellant has failed to show that he was wrongfully forced to exhaust his peremptory challenges and that an objectionable juror was seated. See Cummings v. State, 715 So.2d 944, 948 (Fla.1998); Trotter v. State, 576 So.2d 691, 693 (Fla.1990), cert. denied, 522 U.S. 876, 118 S.Ct. 197, 139 L.Ed.2d 134 (1997). The trial court allowed appellant an additional peremptory challenge when he asked for one. After he exercised the challenge, appellant did not seek an additional challenge.
We reject appellant's claim that the prosecution discriminated in its exercise of a peremptory challenge. The court's determination that the stated reason for the challenge was race neutral was not clearly erroneous. See Burris v. State, 748 So.2d 332 (Fla. 4th DCA 1999); Young v. State, 744 So.2d 1077 (Fla. 4th DCA 1999).
Appellant challenges a number of the trial court's evidentiary rulings. Jason Holloway's testimony interpreting a statement made by appellant was admissible as a lay witness opinion; defense counsel effectively cross-examined Holloway on this point. Holloway's statement that he first met appellant in a work release program was inadvertent and brief. The defense did not request a curative instruction. The trial court did not abuse its discretion in denying the motion for mistrial. See Snipes v. State, 733 So.2d 1000, 1005 (Fla. 1999); Merck v. State, 664 So.2d 939 (Fla. *1164 1995); Ferguson v. State, 417 So.2d 639 (Fla.1982).
The testimony concerning appellant's drug related activities established the context in which the criminal acts occurred, his state of mind at the time of the murder, and his motive for burglarizing the victim's residence. See Jorgenson v. State, 714 So.2d 423, 428 (Fla.1998); Caruso v. State, 645 So.2d 389, 394 (Fla.1994).
The defense opened the door to the questioning of witness Sullivan about a polygraph examination. See Ramirez v. State, 739 So.2d 568 (Fla.1999); Bozeman v. State, 698 So.2d 629, 631 (Fla. 4th DCA 1997). Any error in the questioning of the witness about the polygraph was harmless. See Goodwin v. State, 751 So.2d 537 (Fla. 1999); State v. DiGuilio, 491 So.2d 1129 (Fla.1986).
Finally, we find no error in the trial court's instructions to the jury. The instruction regarding unexplained possession of recently stolen property was supported by the evidence. See Jackson v. State, 736 So.2d 77 (Fla. 4th DCA 1999); Youngs v. State, 736 So.2d 85 (Fla. 4th DCA 1999); Barnlund v. State, 724 So.2d 632 (Fla. 5th DCA 1998). There was no error in the trial court's refusal to give the "independent acts" instruction requested by appellant. The evidence did not support an independent acts theory as to the murder. See Lovette v. State, 636 So.2d 1304, 1307 (Fla.1994); Dell v. State, 661 So.2d 1305 (Fla. 3d DCA 1995). The victim's death "lessened the immediate detection of the robbery and apprehension of the perpetrators and, thus, furthered that robbery." Lovette, 636 So.2d at 1307.
AFFIRMED.
STEVENSON, J., and BAILEY, JENNIFER D., Associate Judge, concur.
NOTES
[1] Jerry Ellis was tried separately.
[2] This court must view the evidence at trial in the light most favorable to the prevailing party. See, e.g., Brennan v. State, 754 So.2d 1 (Fla.1999) (viewing evidence in light most favorable to state); Cochran v. State, 547 So.2d 928, 930 (Fla.1989) ("The circumstantial evidence standard does not require the jury to believe the defense version of facts on which the state has produced conflicting evidence, and the state, as appellee, is entitled to a view of any conflicting evidence in the light most favorable to the jury's verdict.") (citation omitted).