BENTON, J.
 

 Nicholas Alexander Chesser appeals convictions under section 316.193(3), Florida Statutes (2006), on two counts of driving under the influence manslaughter. That two people died in the accident is not in dispute. But the state had also to prove that Mr. Chesser, a driver who survived, was under the influence of alcoholic beverages, a chemical substance, or a controlled substance to the extent that his normal faculties were impaired immediately before the collision. He contends the trial court erred in allowing the state to introduce, for this purpose, opinions of lay witnesses regarding the meaning of the word “throwed.” Because we agree with this contention and reverse on this basis, we need not address his other arguments.
 

 Traveling east on a six-lane highway, Mr. Chesser’s vehicle crossed into the westbound lanes and hit another vehicle almost head on. Both people in the oncoming vehicle died at the scene of the accident. Mr. Chesser, who was not wearing his seatbelt, was ejected from his vehicle.
 

 He was lying injured in the highway, when witnesses arrived on the scene, where he remained unconscious for approximately fifteen minutes. Two motorists who stopped at the accident scene, Ms. Bautista and Ms. Tarno, testified that, after he regained consciousness, he was highly agitated, began to scream and curse, saying among other things that he “was throwed.”
 

 Over objection,
 
 [1]
 
 the trial court allowed the state to introduce testimony from the motorists who stopped regarding the meaning of the word “throwed.” Ms. Bau-tista testified the word meant under the influence of alcohol. Ms. Tarno testified the word meant under the influence of alcohol or drugs. In arguing that testimony from Ms. Bautista and Ms. Tarno regarding their understanding of “throwed” was admissible, the prosecutor asserted— and the trial court agreed — that their testimony established that Mr. Chesser’s saying that he was “throwed” was an admission that he was under the influence of drugs.
 
 [2]
 

 Both Ms. Bautista and Ms. Tarno testified to the meaning of the word “throwed” based on their personal experience, not with the defendant, whom they had never met before the accident, but with unnamed others at places in unspecified localities, one or more years prior to the accident.
 
 [3]
 
 
 *627
 
 Permitting Ms. Bautista and Ms. Tarno to interpret the meaning of the word “throwed” effectively transformed Mr. Chesser’s statement into a confession, even though he maintained his innocence, never admitting he had been under the influence of drugs or alcohol or otherwise impaired at the time of the accident.
 

 Neither Ms. Bautista nor Ms. Tarno testified that Mr. Chesser appeared to be “under the influence.”
 
 [4]
 
 No alcohol was found in Mr. Chesser’s blood. While tests did reveal alprazolam (Xanax) in Mr. Ches-ser’s blood, the parties presented conflicting expert opinion testimony regarding whether the level of alprazolam found to be present would have rendered him impaired before the impact.
 

 Neither Ms. Bautista nor Ms. Tarno was offered as an expert, or identified the basis for any opinion that Mr. Chesser’s use of the word “throwed” was an admission that he was under the influence of drugs or alcohol. “As a general l’ule, lay witnesses may not testify in the form of opinions or inferences; it is the function of the jury to draw those inferences.”
 
 Thorp v. State,
 
 777 So.2d 385, 395 (Fla.2000). The exception to this rule set out in section 90.701, Florida Statutes (2006),
 
 [5]
 
 does not apply here where each of the witnesses could “readily, and with equal accuracy and adequacy, communicate what [s]he ... ha[d] perceived to the trier of fact without testifying in terms of inferences or opinions.”
 
 See Thorp,
 
 777 So.2d at 395-96 (holding the trial court erred in permitting a witness to testify that Thorp’s statement that he “did ... a hooker” meant that Thorp had killed her where the witness “had no difficulty conveying to the jury what Thorp said to him while in prison” and the “exact meaning of Thorp’s words and the inferences that could be drawn from them” “should have been made by the jury and not by the witness”);
 
 Dixon v. State,
 
 13 Fla. 636, 644-45 (1869) (holding that the trial court, after a witness testified that
 
 *628
 
 Dixon said that he “was in determination to cut [her]
 
 foothold
 
 short,” erred in allowing the witness to testify that she understood by the word “foothold” that Dixon would cut the victim, stating that “in the absence of anything to show that the word ‘foothold’ required interpretation by an expert, and that the witness was an expert in languages, we think it was proper that the jury and not the witness should have solved the question.”).
 

 As Professor Ehrhardt explains in Charles W. Ehrhardt, Ehrhardt'’⅛
 
 Florida Evidence
 
 § 701.1 at 668-71 (2008 ed.), the opinions of lay witnesses are admissible in certain limited circumstances:
 

 Opinion evidence of matters perceived by one of the senses, such as distance, time, size, weight, form, or identity, have usually been admitted. Non-expert witnesses have been allowed to give opinion testimony of these matters when they have knowledge based upon them personal perception. Lay witnesses are competent to give their opinions based on them knowledge, as long as they are capable of doing so. In these situations, testimony in the form of an opinion is necessary for the witness to adequately and readily communicate to the trier of fact what was perceived. However, if the opinion is nothing more than speculation, it is not admissible.
 

 ... For example, lay opinion as to identity of a person is admissible when it is shown that the witness had “a previous personal acquaintance with or knowledge of’ the person identified and “bases his opinion upon such acquaintance or knowledge.”
 

 (Footnotes omitted.) But the witnesses in the present case did not claim “knowledge based upon their personal perception” or any necessity to resort to opinion in order to communicate adequately to the jury what they had heard Mr. Chesser say.
 

 To reiterate, there was no suggestion that either Ms. Bautista or Ms. Tarno knew Mr. Chesser or had ever seen him before the accident, much less heard him use the word “throwed” to mean he was drunk or under the influence of drugs. There was no evidence that the witnesses had lived in the same vicinity as Mr. Ches-ser or been a member of the same subculture or had in any other way acquired knowledge of his personal modes of expression.
 
 Compare Jones v. State,
 
 908 So.2d 615, 621-22 (Fla. 4th DCA 2005) (holding the trial court did not abuse its discretion in permitting Ruiz to testify that when Jones said Ruiz should “[m]ake sure” a particular person “never made it to the courtroom” that Jones meant for Ruiz to kill the person because there “was clearly evidence of a basis for Ruiz to know Jones’ subjective meaning of the phrase he spoke” based on the “prior history of close friendship and ongoing discussions between Ruiz and Jones” and their “multiple discussions regarding what Ruiz was going to do to” the person, so that “Ruiz’s testimony as to his interpretation regarding statements made to him by Jones was not inadmissible speculation”);
 
 Vasquez v. State,
 
 763 So.2d 1161, 1163 (Fla. 4th DCA 2000) (holding that Jason Holloway’s testimony that Vasquez told him that his co-defendant Ellis “was wanting to do something,” and that Holloway interpreted this to mean that “they was wanting to do a burglary,” was admissible as lay witness opinion, given the parties’ relationship). The present case is also distinguishable from decisions in which courts have held that law enforcement officers may testify as experts regarding the meaning of codes or slang terms used by drug dealers based on their specialized knowledge and experience.
 
 See Smith v. State,
 
 7 So.3d 473, 497 (Fla.2009). Ms. Bautista and Ms. Tarno were not qualified as experts of any kind.
 

 
 *629
 
 The error was not harmless under
 
 State v. DiGuilio,
 
 491 So.2d 1129 (Fla.1986). As a practical matter, the only contested issue in the case was whether Mr. Chesser was under the influence of alprazolam to the extent his normal faculties were impaired at the time of the accident. There was no alcohol in Mr. Chesser’s blood, and expert opinion testimony regarding the effect of the alprazolam was conflicting. In these circumstances, the non-expert witness testimony regarding the meaning of the word “throwed” may have been determinative. Because we cannot say beyond a reasonable doubt that it did not affect the jury’s verdict, we reverse and remand for a new trial.
 

 Reversed and remanded.
 

 KAHN and CLARK, JJ., concur.
 

 [1]
 

 .Defense counsel objected on grounds the testimony was “based purely on speculation and there won't be a foundation for those statements.” The prosecutor responded: “LTJhose witnesses will tell you that, as young people who are the exact same age, to them that is a term in common usage that indicates a person’s impaired or intoxicated. And it’s a slang [sic] that’s used.” The defense also objected on relevance grounds and on grounds "that the prejudicial value outweighs any probative effect.”
 

 Defense counsel objected further: "It would really be no different than me just trying to say a meaning that I’ve heard associated with a word. I mean the problem that we've got is it really is putting an intent in the defendant’s mouth that was not said. We’ve got an equally plausible explanation, which is that he had been ejected or thrown from the Jeep.” Defense counsel maintained that none of the state’s "witnesses can testify that that was our client's understanding or that he knew that.”
 

 [2]
 

 . In ruling the testimony was admissible, the trial court stated “that it could be an admission and it may be admissible.”
 

 [3]
 

 . Ms. Tarno did not testify regarding her age, although questioning indicated she was older
 
 *627
 
 than Ms. Bautista. Ms. Tarno testified that she had heard "younger people” use the term “throwed” to mean "they were messed up some way, either drugs or alcohol.” Her experience with the term was based on her experience after a "divorce several years ago” when she went "back into the single crowd” with "younger kids.” Ms. Bautista testified that approximately one year prior to the accident, when she was eighteen years old, she would "hang out” with people her own age and had the opportunity to observe people under the influence of drugs or alcohol. She testified that she recalled "them” using the term “throwed” to mean drunk or under the influence and primarily in reference to alcohol.
 

 [4]
 

 . Both testified that, after regaining consciousness, when Mr. Chesser tried to move he would scream; and that they knew he was in pain and tried to get him to be still. They also testified that he yelled that he wanted to be left alone, and tried to get up and walk away. (A medical expert testified that this was not uncommon behavior for someone with a closed head injury.) "The law seems well established that testimony consisting of guesses, conjecture or speculation — suppositions without a premise of fact — are [sic] clearly inadmissible in the trial of causes in the courts of this country.”
 
 Jones v. State,
 
 908 So.2d 615, 621 (Fla. 4th DCA 2005) (quoting
 
 LeMaster
 
 v.
 
 Glock, Inc.,
 
 610 So.2d 1336, 1338-39 (Fla. 1st DCA 1992)).
 

 [5]
 

 . Section 90.701, opinion testimony of lay witnesses, provides:
 

 If a witness is not testifying as an expert, the witness’s testimony about what he or she perceived may be in the form of inference and opinion when:
 

 (1) The witness cannot readily, and with equal accuracy and adequacy, communicate what he or she has perceived to the trier of fact without testifying in terms of inferences or opinions and the witness's use of inferences or opinions will not mislead the trier of fact to the prejudice of the objecting party; and
 

 (2) The opinions and inferences do not require a special knowledge, skill, experience, or training.