DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**WILLIE LAFAYETTE,** individually, and
**SOUTHEASTERN FREIGHT LINES, INC.,**
Appellants/Cross Appellees,

v.

**SAMUEL A. MOODY,** individually, **RITA GENOVESE,** individually, and as
Personal Representative of the Estate of **MICHAEL A. GENOVESE,**
Appellees/Cross Appellants.

No. 4D18-3687

[April 14, 2021]

Appeal and cross-appeal from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; A.B. Majeed, Senior Judge; L.T. Case No. 2013CA002467.

Sarah Lahlou-Amine of Banker Lopez Gassler P.A., Tampa, for appellants/cross appellees.

Elaine D. Walter, Yvette R. Lavelle, and Craig J. Shankman of Boyd Richards Parker Colonnelli, Miami, for appellee/cross appellant, Samuel A. Moody.

Julie H. Littky-Rubin of Clark, Fountain, La Vista, Prather, Keen & Littky-Rubin, LLP, West Palm Beach, and Steven G. Calamusa of Gordon & Partners, P.A., West Palm Beach, for appellee/cross appellant, Rita Genovese.

KLINGENSMITH, J.

Appellants Willie Lafayette and his employer Southeastern Freight Lines, Inc. appeal the trial court's order granting appellee Rita Genovese, the personal representative of the Estate of Michael Genovese, a new trial following a jury verdict in appellants' favor. Ms. Genovese and Samuel Moody, a co-defendant of Lafayette and Southeastern, both cross-appeal regarding issues stemming from that same order. We agree that the trial court committed several errors during the trial and post-trial proceedings for which a new trial is the only appropriate remedy.

In 2012, Michael Genovese was driving northbound on a two-lane highway that was under construction and lined with concrete barriers on both sides, leaving no shoulder or emergency stopping lane. Mr. Genovese was traveling

1

behind Samuel Moody's vehicle, which was also in the northbound lane. At the same time, Lafayette was driving southbound in one of Southeastern's tractor-trailers. Moody's and Lafayette's vehicles were approaching each other at opposite ends of an S-curve, and according to the evidence, both cars were driving under the posted speed limit. At some point, Moody's vehicle crossed over the centerline and into Lafayette's lane. Neither vehicle was able to avoid the collision, and Moody's vehicle "sideswiped" Lafayette's tractor-trailer near its left steer axle and made another impact near the left rear of the truck. Because of this collision, Lafayette's tractor-trailer jackknifed and entered the northbound lane where it crashed into Mr. Genovese's car, killing Mr. Genovese. The Estate of Mr. Genovese filed a wrongful death lawsuit against Moody, Lafayette, and Southeastern. Southeastern also brought a cross-claim against Moody for the damage incurred to its tractor-trailer from the accident.

**Trial**

During jury selection, Ms. Genovese and Moody endeavored to strike potential jurors whom they believed might have potential biases favoring either Southeastern specifically or truck drivers in general. During voir dire, several prospective jurors were struck for cause because they either explicitly articulated, or it was otherwise clear, that they were biased in favor of truck drivers.

One prospective juror, C.W., indicated that her husband worked as a truck driver for over thirty years. However, unlike the other jurors who had ties to the trucking industry, C.W. stated that nothing about her husband's occupation would cause her to favor "one side or the other." When asked if she would like to serve on the jury and why, C.W. answered yes, because "everybody deserves to be heard." Neither Moody nor Ms. Genovese made a cause challenge against C.W. However, before voir dire ended, Ms. Genovese decided to use a peremptory strike on her. Because C.W. was African American, and at this point was the only African American remaining on the prospective jury panel, appellants requested a race-neutral reason from counsel for the peremptory strike. Ms. Genovese first asserted that C.W.'s husband's significant experience as a truck driver was the reason for the challenge. Moody's counsel accepted this as a race-neutral reason; counsel for appellants did not. Appellants stated that if this was a true concern, Ms. Genovese should have asked to strike C.W. for cause as she did with the other jurors who had ties to the trucking industry. In response, counsel for Ms. Genovese also proffered that C.W. knew another member of the prospective jury panel (who was not ultimately selected as a member of the panel).

The trial court denied Ms. Genovese's peremptory strike, ruling that she "failed to meet the race neutral test as enunciated in the *Neil/Batson* cases."[1]

---

[1] *State v. Neil*, 457 So. 2d 481 (Fla. 1984); *Batson v. Kentucky*, 476 U.S. 79 (1986).

C.W. was selected as a member of the jury panel, and Ms. Genovese noted her objection to that selection on the record.

The day after the jury was selected, counsel for Ms. Genovese revisited the issue regarding juror C.W. by noting that the reasons provided for striking her, namely C.W.'s husband's experience as a truck driver, were genuine. Counsel also stated that C.W.'s perceived eagerness to serve on the jury was another reason to support a peremptory strike because it suggested that she wanted to defend the honor of her husband's profession. Finally, Ms. Genovese informed the trial court that it did not make a finding that either of the two reasons she initially offered for the peremptory challenge were not genuine. In response, appellants repeated their argument that Ms. Genovese should have used a cause challenge on C.W. if she wished to strike her due to her ties to the trucking industry. When Moody's counsel was asked to respond, he voiced his agreement with Ms. Genovese's request for a peremptory strike of C.W. because C.W. was "susceptible to being influenced" by her marriage to a truck driver. Moody's counsel agreed that this was a genuine and race-neutral reason.

Despite the proffered explanation from counsel, the trial court nonetheless stood by its original ruling denying Ms. Genovese's peremptory strike. The trial court noted that *Neil*, *Batson*, and *Melbourne*[2] discussed the "reasonableness" and "genuineness" associated with the use of a peremptory strike. It stated that those cases required courts to place particular emphasis on the "genuineness" of the reasons stated for the challenge. The trial court then stated for the record that it did *not* believe that Ms. Genovese's reason for striking C.W. was race neutral; thus, it did not believe that the reason given for the strike was genuine. In so ruling, the trial court appeared to focus considerably on the racial make-up of the jury—C.W. was the only African American left on the panel—as well as a minority group's right to serve on a jury.

During the trial, the attorneys and numerous witnesses recounted the details of the fatal car accident. Both sides emphasized aspects of the testimony given by both Lafayette and Moody as they were the ones involved in the accident.

Lafayette testified he was very familiar with this stretch of the highway because he drove it every day on his package delivery route. On the day of the accident, Lafayette said he had been talking on his cell phone with the aid of a hands-free device but had ended the call before entering the construction zone. He first saw Moody's vehicle when it was 600 feet away from him. At that time, there was no indication that Moody's vehicle would enter his lane. After this, Lafayette checked his mirrors to ensure that he was maintaining his lane in the construction area. The next time Lafayette saw Moody's vehicle, it was twelve to fifteen feet in front of his truck and suddenly crossing into his lane. Lafayette also said that he saw Moody leaning over. Lafayette testified that he tried to take

---

[2] *Melbourne v. State*, 679 So. 2d 759 (Fla. 1996).

action to avoid the accident, but he was unable to. The impact of the collision with Moody's car knocked his hands off the steering wheel and caused him to lose control of the truck.

Ms. Genovese called witnesses to support her claim that Lafayette was inattentive when the accident occurred. One witness testified that Lafayette did not need to check his mirrors and should have kept his eyes on the road, particularly because he was travelling in a construction zone. Therefore, Ms. Genovese theorized that if Lafayette had kept his eyes on the road from the time he saw Moody's vehicle 600 feet away (which she noted was the approximate length of two football fields), instead of checking his mirrors and talking on his cell phone, he would have had enough time to react to Moody's lane shift and avoid the crash. Additionally, Ms. Genovese argued that the impact of Moody's and Lafayette's vehicles was insufficient to throw Lafayette's hands off the steering wheel as Lafayette claimed.

Moody testified that he could not recall whether he crossed the center of the road and into Lafayette's lane. He stated that he was knocked unconscious after the accident and did not remember. Moody's expert confirmed, however, that Moody's vehicle crossed into Lafayette's lane before crashing into the tractor trailer.

The trial court then allowed Ms. Genovese to introduce evidence of Lafayette's driving history with Southeastern to the jury. This evidence included fourteen documented work incidents. Though some of these incidents involved Lafayette's operation of a tractor-trailer, i.e., backing into a parked car, several others were for non-trucking infractions such as clocking into work early or forgetting to sign after making a delivery.

After the conclusion of a three-week trial, the jury returned a verdict for Ms. Genovese, finding Moody 100% responsible for the accident and awarding her the economic and non-economic damages she sought. The jury found no liability for either Southeastern or Lafayette. The jury also returned a verdict for Southeastern on its cross-claim and awarded it the total amount it sought for the damage to its tractor trailer.

**Post-trial motions**

Shortly after the verdict, Ms. Genovese and Moody both moved for a new trial. Additionally, Moody made an alternative motion for a judgment notwithstanding the verdict regarding Southeastern's cross-claim. The trial court granted both Ms. Genovese's and Moody's motions for a new trial.

In its order granting Ms. Genovese's motion, the trial court listed two reasons for its ruling: (1) its finding that the verdict was against the manifest weight of the evidence and (2) its error in denying her peremptory challenge to juror C.W.

4

As to the first reason, the trial court stated that to find the jury's verdict against the manifest weight of the evidence, it had to determine whether a "reasonable person" would have concluded that the evidence "supported a finding of some negligence, however small" on the part of appellants. Although the trial court acknowledged that both parties presented evidence to support their competing claims, it made the following findings, which it labeled "undisputed":

(a) That Mr. LAFAYETTE had a driving record that should have caused a loud alarm to his employers, that sooner or later tragedy would be inevitable;

(b) That sufficient facts were presented that would raise a genuine and good faith issue about the attentiveness and alertness on the part of Mr. LAFAYETTE on this date at this time and in these circumstances in the mind of a reasonable person;

(c) That Mr. LAFAYETTE was demonstrating inattentiveness in a construction zone that demanded heightened attentiveness;

(d) That Mr. LAFAYETTE admitted to losing sight of Mr. Genovese for a distance of approximately two football fields immediately preceding the deadly crash; and

(e) That in the final analysis, it was Mr. LAFAYETTE who crossed outside of his lane and struck and killed Mr. Genovese.

Based on these "undisputed findings," the trial court opined the jury's finding of zero liability against appellants was against the manifest weight of the evidence and a new trial was warranted to cure that error.

Then, as to the second reason, the trial court reviewed its ruling denying Ms. Genovese's peremptory challenge to juror C.W. The trial court admitted that at the time appellants demanded a race-neutral reason for the peremptory strike, it placed emphasis on the juror's right to remain on the jury and appellants' right to have her on the jury because she was, in the court's words, "a minority." As such, the trial court said it only evaluated the tone, mood, and manner of the juror's responses in finding that she could be fair and impartial. However, the trial court admitted that this was not the proper standard and instead, it should have evaluated whether Ms. Genovese's reason for striking the juror was "genuine" and not race-based. The trial court also opined that in addition to its error in legal analysis, the verdict could have been tainted because of C.W.'s long marriage to a truck driver such that the decision reached by juror C.W. could have been "made outside of record evidence."

In the trial court's order granting Moody's motion for a new trial, it simply referred to its order granting Ms. Genovese's motion for a new trial. However, the trial court's order granted, in part, Moody's motion for judgment

notwithstanding the verdict on Southeastern's cross-claim for damages to its truck. The trial court ruled that Moody should not be liable for the entire amount of damages sustained to Southeastern's tractor-trailer ($41,961.83) just because the truck was totaled after he hit it. According to the trial court, since the evidence showed that Moody ran into the left side of Lafayette's truck and damaged two wheels and two tires, Moody should only be liable for that limited amount of damage. It ordered Southeastern to provide an affidavit delineating that amount of damages so that it could determine how much Moody was liable for. Southeastern provided the requested affidavit over objection while noting that it was solely an estimate because the damages were very interrelated and it was not possible to delineate the damage to specific auto parts. A final judgment was entered for the amount stated in the affidavit.

This appeal followed.

**Granting new trial based on denial of peremptory challenge**

Appellate courts typically review orders granting a new trial for an abuse of discretion. *See Fla. Power & Light Co. v. Hayes*, 122 So. 3d 408, 412 (Fla. 4th DCA 2013). However, this discretion decreases "the closer an issue comes to being purely legal in nature." *See Costa v. Aberle*, 96 So. 3d 959, 962–63 (Fla. 4th DCA 2012). This court explained why in *Ford v. Robinson*, 403 So. 2d 1379, 1382 (Fla. 4th DCA 1981):

> The trial judge who must decide whether to grant a new trial on the proffered ground that some reversible error of law occurred at some point during the trial need only ask … if there was error and if so whether the error was substantially prejudicial. In that instance, the judge is required to sit in essence as an appellate judge. If [the judge] concludes that reversible error has been committed, the judge is obliged to grant a new trial on the same basis that an appellate court would do so. The power of appellate review over the trial judge's resolution of such alleged errors is quite broad, the appellate court being on an "equal footing" with the trial court.

In this case, one of the reasons listed by the trial court for its grant of a new trial was its conclusion that it improperly applied the standard in the relevant case law when denying Ms. Genovese's peremptory challenge. Because this conclusion is legal in nature, this court's standard of review is de novo. *See Costa*, 96 So. 3d at 962–63.

"[T]o strike the appropriate balance between a party's right to exercise peremptory challenges and the attempt to eliminate invidious discrimination in juror selection," *see Hayes v. State*, 94 So. 3d 452, 460–61 (Fla. 2012), *receded from on other grounds, State v. Johnson*, 295 So. 3d 710 (Fla. 2020), the Florida

6

Supreme Court laid out the following test in *Melbourne* for trial courts to use when dealing with a race-based objection to a peremptory challenge:

> A party objecting to the other side's use of a peremptory challenge on racial grounds must: a) make a timely objection on that basis, b) show that the venireperson is a member of a distinct racial group, and c) request that the court ask the striking party its reason for the strike. If these initial requirements are met (step 1), the court must ask the proponent of the strike to explain the reason for the strike. At this point, the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step 2). If the explanation is facially race-neutral and the court believes that, given all the circumstances surrounding the strike, the explanation is not a pretext, the strike will be sustained (step 3). The court's focus in step 3 is not on the reasonableness of the explanation but rather its genuineness. Throughout this process, the burden of persuasion never leaves the opponent of the strike to prove purposeful racial discrimination.

*Melbourne*, 679 So. 2d at 764 (footnotes omitted).

Of particular importance is the third step of this inquiry, in which "[a] trial court must analyze [the] subjective issue [of] whether a proffered explanation for a challenge is a pretext." *Young v. State*, 744 So. 2d 1077, 1082 (Fla. 4th DCA 1999). In other words, the trial court must determine whether the proffered explanation is "genuine[]" or whether it "conceals an intent to discriminate based on race." *See id.* To make this determination, "the trial court must consider all relevant circumstances surrounding the strike." *See Hayes v. State*, 94 So. 3d at 462. "Relevant circumstances may include—but are not limited to—the following: the racial make–up of the venire; prior strikes exercised against the same racial group; a strike based on a reason equally applicable to an unchallenged juror; or singling the juror out for special treatment." *Melbourne*, 679 So. 2d at 764 n.8.

The record shows that the trial court properly followed the first two steps of the *Melbourne* test. Under step one, appellants timely objected to Ms. Genovese's challenge, noted that the potential juror was an African American, and requested that the trial court ask Ms. Genovese the reason for her strike. *See id.* at 764. When asked, and in accordance with step two, Ms. Genovese explained that she sought to strike C.W. because of her marriage to a truck driver. *See id.*

However, the trial court erred in applying the *Melbourne* test at step three, specifically in its analysis of the genuineness of Ms. Genovese's stated reason for challenging C.W. *See id.* The stated reason—C.W.'s potential bias—was clearly race neutral. *See Busby v. State*, 894 So. 2d 88, 99 (Fla. 2004) (stating that a juror may be excluded from a jury for concerns of "impartiality"). Yet, the trial

7

court inexplicably found that Ms. Genovese failed to meet the "race-neutral" test enunciated in *Melbourne* and its state and federal predecessors. This was tantamount to a finding that Ms. Genovese's stated reason for exercising a challenge on C.W. was pretextual with nothing in the record to substantiate that finding. *See Young*, 744 So. 2d at 1082. As stated in *Melbourne*, "peremptories are presumed to be exercised in a nondiscriminatory manner." *See* 679 So. 2d at 764; *see also Hayes v. State*, 94 So. 3d at 464 (same).

Furthermore, under the *Melbourne* test, it was the appellants and not the appellees who had the burden to prove "purposeful racial discrimination." *See* 679 So. 2d at 764. Instead of recognizing the fallacy in appellants' argument and holding them to their burden, the trial court shifted that burden to Ms. Genovese and forced her to come up with other reasons for striking the juror. When it found those reasons to be unpersuasive, it improperly denied her challenge.

The trial court noted the applicable case law when making its ruling but chose to evaluate only one of the circumstances *Melbourne* states is relevant to the genuineness analysis—the racial make-up of the entire jury panel. *See id.* at 764 n.8. What the trial court failed to do was to (1) recognize the presumption that Ms. Genovese was exercising her preemptory challenge in a nondiscriminatory manner and (2) hold appellants to their burden of proving purposeful discrimination. *See id.* at 764. If the trial court had done both things, as required by *Melbourne*, it would have allowed Ms. Genovese to properly exercise her peremptory strike at the outset.

Appellants' only corroboration for a claim of purposeful racial discrimination was that juror C.W., as the sole African American juror left on the panel, had a right as a member of a "minority group" to serve on the jury. This court and others have repeatedly opined that this fact alone is insufficient to override a genuine race-neutral or gender-neutral challenge. While the court is permitted to evaluate the racial make-up of the jury panel as part of its analysis, *see id.* at 764 n.8., it cannot place undue weight on this fact, which is what the trial court did when making its ruling. *See Hayes v. State*, 94 So. 3d at 456 (trial court improperly used a juror's right to serve on a jury as a justification to deny a peremptory challenge).

Only after the trial did the court acknowledge its earlier error and grant appellees' motion for new trial. Given the fact that no new or relevant information about juror C.W. came to light during the trial (again, the court was well-aware of her husband's occupation from the outset) and that no new or additional legal arguments were submitted to the court, it is unclear what caused the court to have this eleventh-hour epiphany. Unfortunately for the parties, this about-face occurred after three weeks of trial and a jury verdict.

Nonetheless, we must affirm the trial court's decision to grant a new trial based on its improper denial of Ms. Genovese's peremptory challenge.

**Granting new trial because the verdict was against the manifest weight of the evidence**

Although the error regarding the denial of Ms. Genovese's peremptory challenge is sufficient to affirm the order granting a new trial, we also review the concurrent reason given for the order. Here, the trial court also concluded that a new trial was warranted because the verdict in favor of Southeastern and Lafayette was against the manifest weight of the evidence. We review such orders for an abuse of discretion. *See Brown v. Estate of Stuckey,* 749 So. 2d 490, 497–98 (Fla. 1999).

The Florida Supreme Court has stated that a trial court can and should grant a new trial if the manifest weight of the evidence is contrary to the verdict. *See Smith v. Brown,* 525 So. 2d 868, 870 (Fla. 1988). This occurs when, for example, "the jury has been deceived as to the force and credibility of the evidence or has been influenced by considerations outside the record." *Brown,* 749 So. 2d at 497 (quoting *Cloud v. Fallis,* 110 So. 2d 669, 673 (Fla. 1959)).

When reviewing the trial court's grant of a new trial based on the manifest weight of the evidence, "an appellate court must recognize the broad discretionary authority of the trial judge and apply the reasonableness test to determine whether the trial judge committed an abuse of discretion." *See id.* at 497–98. Thus, if "reasonable persons could differ as to the propriety of the action taken by the trial court, there can be no finding of an abuse of discretion." *See id.* at 498. "The fact that there may be substantial, competent evidence in the record to support the jury's verdict does not necessarily demonstrate that the trial judge abused his or her discretion in granting a new trial." *See id.*

That said, it is the jury's duty to evaluate the credibility of a witness, and the trial court should refrain from acting as an additional juror. *See Smith,* 525 So. 2d at 870; *Fernalld v. ABB, Inc.,* 46 Fla. L. Weekly D542a (Fla. 4th DCA Mar. 10, 2021). After reviewing the trial court's order listing the reasons why the manifest weight afforded the appellees a new trial, it is clear that the trial court not only re-weighed the evidence, but also acted as a seventh juror in doing so. *See Midtown Enters., Inc. v. Local Contractors, Inc.,* 785 So. 2d 578, 582 (Fla. 3d DCA 2001) (holding that the trial court erred in granting new trial where the order showed that the reasons for its ruling were solely the credibility of the witnesses and the weight of the evidence). The record shows that each one of the five findings that the trial court labeled as "undisputed" and relied upon for its order was either disputed by the parties at trial with competent substantial evidence, conclusory in nature, or simply inaccurate.

9

An examination of the purported findings of fact contained within the order, which the trial court claims to be "undisputed," reveals these findings were based solely on the trial judge's "perception" of the manifest weight of the evidence and indeed were all disputed in some form at trial. *See Phar-Mor of Fla., Inc. v. Steuernagel*, 550 So. 2d 548, 550 (Fla. 2d DCA 1989). In *Steuernagel*, the Second District reversed a similar order because the trial court made no findings that the jury was improperly influenced by considerations outside of the record. *See id.* Here, the only finding the trial court made regarding the jury being influenced by considerations outside of the record related to its ruling on Ms. Genovese's peremptory strike. *See Brown*, 749 So. 2d at 497 (stating that the court should grant a motion for new trial when the jury has been influenced by considerations outside of the record).

Therefore, the "undisputed" nature of the five enumerated facts listed by the trial court is belied by the trial record. And because those facts do not support the trial court's determination that the jury verdict was against the manifest weight of the evidence, we quash that basis for the order granting a new trial.

**Admission of Lafayette's driving record**

We review the admission of evidence under an abuse of discretion standard. *See Yang v. Sebastian Lakes Condo. Ass'n*, 123 So. 3d 617, 620 (Fla. 4th DCA 2013).

Here, the trial court permitted the jury to hear evidence related to Lafayette's driving history. This too was error. Not only was this evidence unduly prejudicial under the facts of this case, *see Clooney v. Geeting*, 352 So. 2d 1216, 1220 (Fla. 2d DCA 1977), but the citations bore no similarity to the circumstances at issue and had no relevance to the issue in the case, that is, Lafayette's alleged negligence at the time of the accident. *See Wainer v. Banquero,* 713 So. 2d 1104, 1105–06 (Fla. 4th DCA 1998).

This error was compounded when in its order for new trial, the trial court listed as an "undisputed" finding of fact "[t]hat Mr. LAFAYETTE had a driving record that should have caused a loud alarm to his employers, that sooner or later tragedy would be inevitable." In fact, there was no evidence that the administrative citations he received, including his citation for backing into a parked car, were an indicator of his competence while driving on the open road. Thus, evidence of Lafayette's driving history should not have been in front of the jury and the trial court not only erred by allowing the history into evidence, but also by using it as a basis for its decision regarding new trial. *See Wainer*, 713 So. 2d at 1105. Because this is an issue that may resurface in a future proceeding, we reverse the trial court's ruling to admit this evidence and preclude its use on retrial.

**Granting a judgment notwithstanding the verdict on Southeastern's cross-claim for damages**

The standard of review for a motion for judgment notwithstanding the verdict is de novo. *See Prewitt Enters., LLC v. Tommy Constantine Racing, LLC*, 185 So. 3d 566, 569 (Fla. 4th DCA 2016).

Southeastern sought $41,961.83 from Moody for the damages to its tractor-trailer. Moody moved for a directed verdict arguing that he should not be liable for the total amount of damages Southeastern sought. He claimed that Lafayette was also at fault for the accident. Contrary to his assertion, the jury found Moody fully liable and awarded Southeastern all the damages it sought from Moody.

Thereafter, Moody filed a motion for judgment notwithstanding the verdict or alternatively a motion for a new trial on Southeastern's damages claim. Despite the nature of Moody's request, the trial court only indicated that it was granting the motion in part and denying the motion in part. In the order, the trial court ruled that Moody was only liable for the damage to the left side of the tractor-trailer where Moody's vehicle collided with it. However, the nature, and effect, of this ruling is inconsistent with other rulings given the fact that (1) Moody also requested a new trial and (2) the trial court also granted Ms. Genovese and Moody a new trial on Ms. Genovese's wrongful death claim.

The Florida Supreme Court has held that "a new-trial order and order for [judgment notwithstanding the verdict] are mutually inconsistent and may not be granted simultaneously." *Keene Bros. Trucking, Inc. v. Pennell*, 614 So. 2d 1083, 1084 (Fla. 1993) (citations omitted). However, the Court noted that "to promote judicial economy, trial judges may properly decide motions on those issues in the alternative." *Id.*

But the Court also stated that these motions may only be simultaneously granted by a trial court on the "express condition" that the order granting the judgment notwithstanding the verdict only becomes effective if the order granting a new trial is reversed on appeal. *See id.* (quoting *Frazier v. Seaboard Sys. R.R.*, 508 So. 2d 345, 346 (Fla. 1987)). That did not happen here.

Additionally, when viewing the evidence, and the reasonable inferences that may be drawn from it, in the light most favorable to appellants (as the non-moving party), there is support for the jury's verdict. *See Melgen v. Suarez*, 951 So. 2d 916, 917–18 (Fla. 3d DCA 2007). The jury determined that Moody was fully responsible for the accident and found that he was liable for the full amount of damages sought by Southeastern. Although Moody and Genovese presented evidence to refute this conclusion (the evidence that Lafayette was distracted and could have evaded accident), appellants did present evidence that Moody was clearly at fault and that there was nothing Lafayette could have done to prevent

the accident that caused extensive damage to the truck. In light of this conflicting evidence, the trial court erred in granting Moody's motion for judgment notwithstanding the verdict, even partially. *See id.*; *Johnson v. Swerdzwski*, 935 So. 2d 57, 60–61 (Fla. 1st DCA 2006).

The trial court's grant of Ms. Genovese's and Moody's motions for new trial on the wrongful death claim because of the trial court's error in jury selection "effectively 'disposed' of" Moody's motion for judgment notwithstanding the verdict. *See Frazier*, 508 So. 2d at 346. For this reason, we quash the trial court's order on Moody's motion for judgment notwithstanding the verdict and find that the issue of Southeastern's damages on its cross-claim should be decided upon retrial.

We affirm the other issues raised by the parties on appeal, including the trial court's denial of Genovese's motion to amend to add a count for punitive damages. *See Bistline v. Rogers*, 215 So. 3d 607, 610 (Fla. 4th DCA 2017) (stating that a trial court, when ruling on a motion to add a punitive damages claim, should not simply "accept[] the allegations in a complaint or motion to amend as true").

*Affirmed in part, reversed in part, and remanded.*

CIKLIN and CONNER, JJ., concur.

*    *    *

***Not final until disposition of timely filed motion for rehearing.***