ROBERTS, Chief Justice.
In original proceedings in prohibition filed by the relator in this court, the relator seeks to oust the respondent of his jurisdiction to act as the trial judge in the trial of certain criminal charges now pending against the relator in the Circuit Court of Pinellas County, involving a violation of the lottery laws of this state. The relator had previously made application to the respondent to recuse himself from the trial of the relator on the ground of bias and prejudice, and the respondent had declined to do so. The principal question here is the legal sufficiency of the relator’s motion for disqualification of the respondent.
The relator grounded his charge that the respondent was biased and prejudiced against him and against all persons charged with violations of the gambling laws of this state on certain statements alleged to have been made by the respondent at a meeting of the circuit judges of this state, as reported in two daily newspapers published in Hillsborough County, the import of which was that recent decisions of this court respecting the law of searches and seizures would make difficult the enforcement of the gambling laws of this state. The affidavits in support of the relator’s claim of disqualification simply averred that these news items had appeared in the named papers and that the statements attributed to him therein had not been denied by Judge Bird, the respondent.
The relator also included with his application an “Exhibit” purporting to be a record of disqualification proceedings filed against the respondent in another criminal case, State v. Allen, involving also a violation of the lottery laws, and which, it was alleged, evidenced a bias and prejudice against all persons charged with such violations, as a class.
Our statute governing the disqualification of trial judges in criminal cases, Section 911.01, Florida Statutes, F.S.A. provides that “the defendant may apply for a change of judge by making and filing an affidavit that he fears a fair trial cannot be had in the court where the case is pending on account of the prejudice of the judge of said court against the applicant,” and also that “the facts stated as a basis for making the affidavit shall be supported in substance by affidavit of at least two reputable citi *680 zens of the county, not of kin to the defendant or of counsel for the defendant * * Since one of the supporting affidavits, referred to above, was not made by a citizen “of the county”, it would appear that the relator’s application was legally insufficient in this respect; nor can it be said that the unverified, uncertified “Exhibit” purporting to be proceedings for the disqualification of the respondent in the Allen case is legally sufficient within the terms of Sec. 92.10, Florida Statutes, F.S.A.
But conceding the truth of the facts upon which the alleged disqualification of the respondent are based, we must agree with the respondent that the relator has fallen sort of the showing necessary to hold the respondent in error for refusing to recuse himself.
As stated by the respondent in his order denying the application for disqualification:
“The alleged statement does not show or indicate that I have not followed or will not follow the decisions of the Higher Courts, nor faithfully follow the mandates of the laws and Constitution. The motion sets out no facts to support this baseless conclusion that I am in any way prejudiced against the defendant in this case or against his attorneys. The supporting affidavits do not even remotely suggest any support for such statements.”
On the contrary, the pronouncement attributed to the respondent clearly infers that it is his intention to follow the principles of law promulgated by this court, even though, in his opinion, such principles are not those best calculated to enforce the gambling laws of this state.
Obviously, the fact that a certain statute or principle of law may run counter to the personal views of a judge does not mean that he is disqualified to try a case involving such law or principle. The not uncommon statement in judicial opinions that “the courts ar,e not concerned with the wisdom of legislation but only with the legislative power to enact it” evidences the fact that judges are often called upon to— and do—uphold and enforce laws with which they might not be entirely in accord.
We have also considered the proceedings in the Allen case which, it is alleged, show a prejudice against those accused of violating the gambling laws, as a class—even though such proceedings cannot rightly be considered by this court as the record presently exists. We conclude that such proceedings show only that the respondent is commendably zealous that vio' lations of the gambling laws shall not go. unpunished—as he is, we are sure, with respect to violations of our other criminal statutes. But this does not mean that the respondent is disqualified to discharge his duty to try any criminal case arising in the Judicial Circuit of which he is a judge.
As stated in his order denying the application for disqualification, the respondent himself felt that “the disqualification here sought is not so much for the purpose of this particular case, but is a studied attempt to impair my fitness and destroy my usefulness as a Circuit Judge in all cases involving the administration of criminal laws, without bringing forth any fact showing that I have failed or ever will fail to follow the decision of the highest courts of the land, or to give full effect to the Constitution and Laws of the State and 'Nation. It is said by the Supreme Court of Florida, ‘where a judge is apprised of an attempt to drive him out of a case for ulterior purposes, he should not retire * * Pepper v. Atkinson,[1] 116 Fla. 366, 156 So. 726.”
While we hold, then, that the disqualification of the respondent has not been made to appear, we feel that we should make it clear that this judgment is not to be interpreted as an expression of approval of the propriety of remarks alleged to have been made, whether such remarks emanate from members of the Bar, or members of the Circuit Bench—who, after all, are lawyers who have been elevated by the people to judgeships. For the Code of Ethics gov *681 erning the conduct of judges and attorneys, alike, as adopted by this court in 1941, Vol. 31, F.S.A., inhibits them in the free expresssion of opinion which one not an officer of the court may rightfully engage in. And we do not think it would be here amiss to reiterate the First Canon of Ethics governing the conduct of attorneys, as follows:
“It is the duty of the lawyer to maintain towards the courts a respectful attitude, not for the sake of the temporary incumbient of the judicial office, but for the maintenance of its supreme importance. Judges, not being wholly free to defend themselves are peculiarly entitled to receive the support of the Bar against unjust criticism and clamor. Whenever therie is proper ground for serious complaint of a judicial officer, it is the right and duty of the lawyer to submit his grievances to the proper authorities. In such cases, but not otherwise, such charges should be encouraged and the person making them should be protected.”
The respect due an appellate court by an inferior tribunal was discussed by this court in defining its attitude to a decision by the Supreme Court of the United States when, in Henderson, Sheriff v. State ex rel. Le , Fla., 65 So.2d 22, 26, this court sai 1:
“Unbridled, unauthorized, or irresponsible criticism of the highest Court of the Nation, and the opinions of such Court by State Supreme Courts, or other inferior courts, has a tendency to destroy the confidence of the people in the Court. Courts exist primarily for the protection of the people, our institutions and form of government. The Court may restrain other departments from President to Constable (the case of Executive Seizure of the steel mills being an outstanding example) from usurpation of power. Neither men, nor organizations, under our form of government, are immune from the restraining power of the courts.
“Orderly government requires respect for and confidence in constituted authority. Unauthorized criticism of, disrespect for and dissents from the opinions of the highest court in the land by inferior courts will eventually destroy all confidence in that Court, resulting in contempt for the Nation’s highest tribunal by whose opinions ‘the Judges in every State shall be bound.’ * * * Should confidence in that tribunal be so undermined, or destroyed, that its opinions were not respected or binding upon anyone, government itself, as we know it today, would cease to exist and in its place we would have turmoil, confusion, anarchy or a dictatorship.”
The courts are not above just criticism. But citizens, and particularly those engaged in the administration of justice, have a responsibility to help in maintaining the appreciation of and respect for an independent judiciary. If they have sound criticism, an independent judiciary guarantees their right to express it — publicly and without fear of reprisal. But if they engage in reckless and unfounded prattle, calculated to damage and weaken our judicial system, they are striking at the citadel that guarantees them the right to criticise with justification.
The rule is discharged.
TERRELL, SEBRING, MATHEWS and DREW, JJ., concur.
HOBSON, J., concurs specially.
THOMAS, J., agrees only to discharge of rule.

. Should read State ex rel. Palmer v. Atkinson.