DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**WILLIAM PAUL DABBS,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D20-607

[November 17, 2021]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Joseph George Marx, Judge; L.T. Case No. 502011CF012022A.

Carey Haughwout, Public Defender, and Stacey Niles Kime, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Georgina Jimenez-Orosa, Assistant Attorney General, West Palm Beach, for appellee.

KLINGENSMITH, J.

Appellant William Paul Dabbs appeals his conviction and sentence for manslaughter, improper exhibition of a firearm, and reckless fleeing or attempting to elude a law enforcement officer. He raises seven points of error. This appeal came after we reversed his conviction based on a pretrial violation by the State and ordered a second trial. *See Dabbs v. State*, 229 So. 3d 359 (Fla. 4th DCA 2017). We now affirm on all issues raised here by appellant but write to specifically address two. Those issues are the peremptory strike of a prospective juror and denial of appellant's motion to disqualify the trial judge based on comments made by the court during trial.

In jury selection, issues arose regarding a prospective juror, a Hispanic female, employed as an aerospace engineer. At one point during voir dire, the court asked the entire venire panel as a group what their verdict would be if he sent them to deliberate before hearing any evidence. The engineer loudly and quickly responded "not guilty" because criminal defendants are presumed innocent.

1

A strike was exercised against this prospective juror, and appellant objected under *Melbourne* because the juror was female and Hispanic.[1] When asked for a gender and race neutral reason for the strike, the State responded that the juror "seem[ed] exceptionally very smart in terms of technical stuff" and that as a result she would "get lured . . . into looking too far into things." The prosecutor emphasized that they did not have a pattern of striking either females or Hispanics. In response, defense counsel countered that this juror had not spoken much and that the State's concerns were based only on "conjecture and speculation as to how she would act or react." The judge noted that all jury selection was speculative and confirmed that it was a viable strategy to strike "super smart people" from jury panels. Further, the court stated that the law prohibits striking individuals based on their gender or religion but this strike did not "touch[] on" that. Ultimately, the trial court allowed the strike, ruling that the reason for striking the prospective juror was gender and race neutral as well as genuine. Appellant's counsel renewed their objection before the jury was seated.

Appellant was acquitted of first or second-degree murder but found guilty of the lesser-included offense of manslaughter with a weapon. The jury found appellant not guilty of aggravated assault but guilty of the lesser-included offense of improper exhibition of a firearm. The jury also found appellant guilty as charged on the charge of fleeing or attempting to elude.

Two days after the jury's verdict, appellant moved to disqualify the trial court judge from presiding over his sentencing. Appellant pointed to numerous off-hand statements the judge made during trial revealing displeasure with some of this court's previous appellate decisions, including the one reversing appellant's original conviction.[2]

Appellant's motion asserted that several of the referenced comments about the opinion reversing appellant's first judgment and sentence suggested that the judge believed the original convictions should have been upheld. Thus, appellant claimed a "well-grounded" fear about the court's partiality. The judge denied appellant's motion without explanation, conducted the sentencing hearing, and imposed the statutory maximum for each felony count: thirty years for the manslaughter charge and fifteen years for the fleeing or attempting to elude charge, to run concurrently. The court also imposed time served on the misdemeanor improper exhibition of a firearm charge. This appeal followed.

---

[1] *Melbourne v. State*, 679 So. 2d 759 (Fla. 1996).
[2] In one comment, the judge alluded to jury selection and indicated a sense of relief that he did not "have to deal with that ridiculous opinion out of the Fourth DCA about mathematical formulas in picking juries."

**Peremptory Strike**

"Where a peremptory strike is alleged to have been exercised in a racially discriminatory manner, we review a trial court's ruling to determine whether it was clearly erroneous or an abuse of discretion." *West v. State*, 168 So. 3d 1282, 1284 (Fla. 4th DCA 2015) (quoting *Cook v. State*, 104 So. 3d 1187, 1189 (Fla. 4th DCA 2012)). In these cases, appellate courts "must follow two guiding principles: (1) peremptory challenges are presumed to be exercised in a nondiscriminatory manner; and (2) the trial judge's ruling on a peremptory challenge, which turns primarily on an assessment of credibility, will be affirmed on appeal unless it is clearly erroneous." *Cobb v. State*, 825 So. 2d 1080, 1085–86 (Fla. 4th DCA 2002). The second guiding principle arises due to "the superior vantage point of the trial judge, who is present, can consider the demeanor of those involved, and get a feel for what is going on in the jury selection process." *See id.* at 1086 (quoting *Files v. State*, 613 So. 1301, 1305 (Fla. 1992)).

The Florida Supreme Court laid out the following test for trial courts to use when dealing with a race-based objection to a peremptory challenge:

> A party objecting to the other side's use of a peremptory challenge on racial grounds must: a) make a timely objection on that basis, b) show that the venireperson is a member of a distinct racial group, and c) request that the court ask the striking party its reason for the strike. If these initial requirements are met (step 1), the court must ask the proponent of the strike to explain the reason for the strike.
>
> At this point, the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step 2). If the explanation is facially race neutral and the court believes that, given all the circumstances surrounding the strike, the explanation is not a pretext, the strike will be sustained (step 3). The court's focus in step 3 is not on the reasonableness of the explanation but rather its genuineness. Throughout this process, the burden of persuasion never leaves the opponent of the strike to prove purposeful racial discrimination.

*Melbourne*, 679 So. 2d at 764 (footnotes omitted).

Of particular importance is the third step of this inquiry, where "[a] trial court must analyze [the] subjective issue [of] whether a proffered explanation for a challenge is a pretext." *Young v. State*, 744 So. 2d 1077, 1082 (Fla. 4th DCA 1999). In other words, the trial court must determine whether the proffered explanation is "genuine[]" or whether it "conceals an intent to discriminate based on race." *See id.* To determine genuineness, "the trial court must consider all relevant circumstances surrounding the strike." *See Hayes v. State*, 94 So. 3d

3

452, 462 (Fla. 2012). "Relevant circumstances may include—but are not limited to—the following: the racial make–up of the venire; prior strikes exercised against the same racial group; a strike based on a reason equally applicable to an unchallenged juror; or singling the juror out for special treatment." *Melbourne*, 679 So. 2d at 764 n.8.

Florida courts also use a non-exclusive list of five factors, some of which overlap with the "relevant circumstances" above, to determine whether a strike is genuine:

> (1) alleged group bias not shown to be shared by the juror in question, (2) failure to examine the juror or perfunctory examination, assuming neither the trial court nor opposing counsel had questioned the juror, (3) singling the juror out for special questioning designed to evoke a certain response, (4) the prosecutor's reason is unrelated to the facts of the case, and (5) a challenge based on reasons equally applicable to juror [sic] who were not challenged.

*State v. Slappy*, 522 So. 2d 18, 22 (Fla. 1988), *receded from on other grounds*, *Melbourne*, 679 So. 2d at 765.

We find no error in the trial court's granting of the peremptory strike. In making its ruling, the trial court properly followed the procedure set forth in *Melbourne*, and appellant failed to rebut the presumption that the State's peremptory strike was genuine or show that the trial court's ruling was clearly erroneous. *See Cobb*, 825 So. 2d at 1085–86. Because the trial court conducted a proper genuineness inquiry, we must give appropriate deference to its determination. *See id.* at 1086; *see also King v. Byrd*, 716 So. 2d 831, 834 (Fla. 4th DCA 1998) (stating that the trial court's determination of genuineness must be respected because it was able to "see the expressions, hear the tones of voices, [and] observe the general dynamics of the courtroom").

**Disqualification of Trial Judge**

"The standard of review of a trial judge's determination on a motion to disqualify is de novo." *Parker v. State*, 3 So. 3d 974, 982 (Fla. 2009). "The test for determining the legal sufficiency of a motion for disqualification is whether 'the facts alleged (which must be taken as true) would prompt a reasonably prudent person to fear that he could not get a fair and impartial trial.'" *Law Off. of Herssein & Herssein, P.A. v. United Servs. Auto. Ass'n*, 229 So. 3d 408, 409 (Fla. 3d DCA 2017) (quoting *Molina v. Perez*, 187 So. 3d 909, 909 (Fla. 3d DCA 2016)). The facts alleged must be "germane to the judge's undue bias, prejudice, or sympathy." *Jackson v. State*, 599 So. 2d 103, 107 (Fla. 1992); *see Suarez v. State*, 115 So. 519, 525 (Fla. 1928) (finding that disqualification is only

4

applicable "in those rare instances in which the affiant is able to state facts which tend to show . . . personal bias or prejudice."). And, as indicated by the "reasonable person" standard, the movant's fear of "judicial bias must be objectively reasonable;" a subjective fear is insufficient. *See Parker*, 3 So. 3d at 982.

This court's review of appellant's motion must focus on "the reasonable effect [of the statements] on the party seeking disqualification, not the subjective intent of the judge." *Haas v. Davis*, 37 So. 3d 983, 983 (Fla. 3d DCA 2010) (quoting *Vivas v. Hartford Fire Ins. Co.*, 789 So. 2d 1252, 1253 (Fla. 4th DCA 2001)). In other words, a well-grounded fear "is not a question of how the judge feels; it is a question of what feeling resides in the affiant's mind and the basis for such feeling." *Livingston v. State*, 441 So. 2d 1083, 1086 (Fla. 1983) (quoting *State ex rel. Brown v. Dewell*, 179 So. 695, 697–98 (Fla. 1938)).

We have previously recognized the distinction between personal bias and judicial bias when evaluating motions for disqualification that stem from a trial judge's in-court comments. *See Torres v. State*, 697 So. 2d 175, 176 (Fla. 4th DCA 1997). Personal bias must come from an extrajudicial source, such as a bias directed at a defendant simply because of the category of their case. *See id.* Because this type of bias personally affects the defendant and places them in fear of not receiving a fair ruling, it provides sufficient legal grounds for disqualification. *Id.* at 177. On the other hand, judicial bias is bias that is based upon the judge's feelings regarding a certain legal principle or a court opinion. *Id.* at 176. Unlike personal bias, judicial bias is almost never legally sufficient for disqualification. *Id.* As Justice Scalia explained in *Liteky v. United States*, 510 U.S. 540, 544–56 (1994), regarding judicial bias:

> First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. . . . Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. . . . Not establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display.

*Liteky*, 510 U.S. at 555–56 (citations omitted) (emphasis removed)).

We noted in *Torres* that the distinction between personal and judicial bias referenced by the federal courts is manifested in the Florida opinions on the subject, even if it has not been expressly adopted. *See Torres*, 697 So. 2d at 176; *State ex rel. Gerstein v. Stedman*, 238 So. 2d 615 (Fla. 1970) (trial judge's statement that he philosophically opposed granting immunity to testifying witnesses constitutes a disagreement of law amounting to judicial bias not legally sufficient for disqualification); *State ex rel. Sagonias v. Bird*, 67 So. 2d 678 (Fla. 1953) (judge's criticism of a court opinion was judicial bias and legally insufficient to disqualify him). However, a judge's stated judicial policy that personally affects the defendant and places him in fear that he will not receive a fair hearing is legally sufficient grounds for disqualification. *See Torres*, 697 So. 2d at 177; *Konior v. State*, 884 So. 2d 334, 335 (Fla. 2d DCA 2004) (holding that "a judge who has made statements indicating that he or she has predetermined the appropriate sentence is disqualified"); *Ledo v. R.J. Reynolds Tobacco Co.*, 314 So. 3d 366, 367 (Fla. 3d DCA 2020) (differentiating between "a statement of philosophy [which is allowed], rather than a stated judicial policy [which is not].").

Judges have a duty to follow the law and must conform their court rulings—and any comments expressed in the discharge of their official duty—to the opinions of higher courts, whose decisions they are bound to follow. As Judge Letts stated in his concurring opinion in *Hayslip v. Douglas*, 400 So. 2d 553, 558 (Fla. 4th DCA 1981), "[h]e who chooses to sit on the bench must forego the pleasures of oral condemnations therefrom which are unrelated to the furtherance of the cause at hand."

The trial court's numerous remarks during the trial, along with the form and delivery of such comments, failed to promote confidence in the integrity and impartiality of the judiciary and directly led to appellant's motion to disqualify. *See* Canon 1 of the Code of Judicial Conduct ("An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective.").

In *Holley v. State*, 48 So. 3d 916, 922 (Fla. 4th DCA 2010), a case involving an isolated remark by a trial court, this court stated:

> The courtroom is neither a stage designed for trial judges to editorialize about their interpretation of the law, nor is it a place to express displeasure with higher court rulings. Rather, the

6

courtroom is designed to allow our system of justice to unfold and provide all parties concerned with a fair trial.

Here, the court's remarks were not isolated like in *Holley*, and we decline to enumerate them all. Though it would have been far better had the trial judge refrained from saying the things that sparked appellant's motion, we find that the comments did not require disqualification. While we agree with appellant that the trial court's comments were injudicious, the issue is not the remarks themselves, or the number of them, but whether they were reasonably sufficient to create a well-grounded fear on the part of appellant that he would not receive a fair trial. *See Fischer v. Knuck*, 497 So. 2d 240 (Fla. 1986). Under these circumstances, they did not. The trial judge's comments regarding this court's opinion reversing appellant's original conviction, when read in context, merely evidence a personal disagreement with the legal underpinnings of the decision rather than an expression of disfavor with the reversal for new trial. Such comments fall within the ambit of judicial bias rather than personal bias and were insufficient to constitute legal grounds for disqualification. *See Torres*, 697 So. 2d at 176.

*Affirmed.*

LEVINE and KUNTZ, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***